# Hatch D. Billingsley *vs.* Gideon D. Tongue and Thomas O. Tongue.

There is a manifest distinction between *void* and *lapsed* devises or legacies, and our act of 1810, ch. 34, sec. 4, applies *only* to the latter, and not to the case of a *void devise,* as where the *devisee was dead when the will was made.*

The words in this act, "or fail of *taking effect,*" are used only to repeat by way of explaining and amplifying the same idea as that conveyed by the previous word "*lapse.*"

A testator devised the residue of his estate to his three children, one of

whom, a daughter, was dead at the date of the will, but left children, who survived the testator, and then died intestate. HELD:

That the devise being *void* as to the daughter, the surviving *father* of her children could not take in any event; for if her portion fell into the estate and descended to the heirs generally, the interest of her children would descend *through their mother,* and go to their uncles on the mother's side, and not to their father.

APPEAL from the Equity Side of the Circuit Court for Anne Arundel county.

The question in this case arose upon the distribution of the proceeds of certain real estate, sold under a decree in equity, in which Gideon G. Tongue, deceased, held an undivided interest. The appellant, Hatch D. Billingsley, who was the surviving husband of Ann C., one of the children of the deceased, claimed one-third of that portion of the proceeds to which the deceased would have been entitled if living, as heir at law of his (the appellant's) three infant children, who died intestate, whilst the appellees, the surviving children of the deceased, claimed the whole thereof. The facts upon which these respective claims were based are fully stated in the opinion of this court.

The court below, (BREWER, J.,) delivered an opinion, in which, after stating the facts of the case, he says:

"The petitioner, Hatch D. Billingsley, claims the portion of Ann C. Billingsley, (one-third of these proceeds,) as a lapsed legacy to her, by virtue of the acts of 1810, ch. 34, and 1832, ch. 295, contending that his deceased children took her interest by purchase or by statutory transfer, and that on the death of the children it descended to him as an estate by purchase under the act of 1820, ch. 191, sec. 1. Gideon D. Tongue and Thomas O. Tongue contend, that the devise would convey to the three children a tenancy in common in fee, and, therefore, that they took by descent; the two sons directly from their grandfather; and the children of Ann by representation through her, it being, therefore, an estate descending to them on the part of their mother, and at their deaths descending to the uncles on the part of the mother. They contend further, that if the devisees would take by the devise, and not by

descent, that the devise to Ann was void, and not a lapsed devise under the act of 1810, and, therefore, in that view of the case, that part went directly to them as survivors, or descended to them and the children of Ann, to the latter on the part of the mother, and so to the uncles on the part of the mother.

"Both parties admit in their notes that the estate, by the words of the will, constituted a tenancy in common in fee, and without the admission I should be of that opinion. The testator devises the residue of his estate to persons whom he also designated as his children and heirs. He must have meant to give them the whole estate, for he must have known that they would take the whole as devisees or heirs.

"I agree with the counsel for the Tongues, that they and the children of Ann took by descent, the estate devised being precisely the same in quantity and quality as the estate descended. 1 *H. & J.,* 478, *Philips vs. Dashiell.* 7 *G. & J.,* 71, *Medley vs. Williams.* Of course the one-third descending to the children of Ann on the part of the mother goes, on their death, to the uncles on the part of the mother, to the exclusion of the father. Being of this opinion, it is unnecessary for me to consider the other points in the case."

The court then passed an order ratifying the account, which distributed the whole fund to the Tongues, and from this order Billingsley appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*Alex. B. Hagner* and *Alex. Randall* for the appellant, argued:

1st. That the devise in Dr. Tongue's will to Mrs. Billingsley did not lapse or fail of effect, by reason of her death, *before* the execution of the will. The act of 1810, ch. 34, sec. 4, provides, that "no devise, legacy or bequest, shall lapse, *or fail of taking effect,* by reason of the death of any devisee or legatee named in any last will or testament, or any codicil thereto, *in the lifetime of the testator,* but every such devise, legacy or

73    v.9

bequest, shall have the same *effect* and operation in law, *to transfer* the right, estate and interest in the property mentioned in such devise or bequest, as if such devisee or legatee had survived the testator.'' Mrs. Billingsley died the day before the will was executed, and the first question is, what effect has this fact upon the devise to her? The argument on the other side is that the devise was *void,* and therefore unaffected by this law. Our view of it, however, is entirely different. This act was passed to cover *every case* where devises or legacies *fail to take effect,* regardless of the *mode* in which that failure shall occur, whether by *lapsing* or for any other reason. Its language is, that "no devise or legacy shall *lapse or fail to take effect.*" The words *"fail to take effect,* are not unmeaning; they were not inserted without a purpose, but were evidently designed to cover just such a case as the present. The devisee died *"in the lifetime of the testator,"* and there is nothing in the law which limits its operation to cases of death *after* the will was executed. By reason of this death the devise would, but for this law, have *failed to take effect,* but the law comes in and says it shall *not fail to take effect* for such a cause. The language of the act seems to us to admit of but one interpretation, viz., that wherever a legacy or bequest would, previously to its passage, have *lapsed,* or *failed to take effect,* by reason of the death of the legatee or devisee in the *lifetime of the testator,* no matter whether such death may occur *before* or *after* the making of the will, such legacy or bequest shall not *lapse* or *fail to take effect.* This interpretation includes the present case, even if the devise would by the previous law be regarded as a *void* devise. But we further insist, there is no such distinction between a *lapsed* and a *void devise* as stated in the argument on the other side. Such a distinction has never been recognised by any decision in Maryland, nor is it settled by the best authorities elsewhere. In support of our views upon this point, we refer to 1 *Brown's Ch. Cases,* 84, *Maybank vs. Brooks.* 4 *Strob. Eq. Rep.,* 180, *Hatcher vs. Robertson.* 1 *Dana,* 201, *Gore vs. Stevens.* 1 *Hoff. Ch. Rep.,* 202, *Wright vs. Trustees of Methodist Church.* 4 *H. & J.,* 446, *Trippe vs. Frazier.* 3 *H. & McH.,* 333, *Lingan vs. Carroll.* 4 *Kent's Com.,* 542.

2nd. If we are right in the view that the act of 1810 oper-
ates upon this devise, notwithstanding the death of the devisee
before the will was made, then the effect of this act was to
*transfer* to her children the same interest which she would
have received if she had survived the testator. The statute
comes in and operates a *statutory transfer* to the children.
The title which they thus acquired was a title by *purchase*,
and not by *descent*, and upon their death became the property
of their father, under the act of 1820, ch. 191, sec. 1.  7 *G.
& J.*, 362, *Glenn vs. Belt.*  11 *Do.*, 328, *Young vs. Robin-
son.*  3 *Md. Rep.*, 194, *Gilpin vs. Hollingsworth.*  2 *Bl.
Com.*, 188, 191.

3rd. The devise in Dr. Tongue's will was not to his chil-
dren *as a class*, and, therefore, Mrs. Billingsley's interest did
not survive to her brothers.  7 *Iredell*, 9, *State vs. Shannon-
house.*  3 *Myl. & Craig*, 697, *Barber vs. Barber.*  1 *Roper
on Legacies*, 331.

*Nicholas Brewer, Jr.*, and *Coleman Yellott* for the appel-
lees, argued:

1st. That the acts of 1810, ch. 34, sec. 4, and 1832, ch.
295, do not give effect to a devise void *ab initio;* they relate
only to devises good at the *date of the will*, but which, by the
rules of law, would have *lapsed* by the *subsequent* death of
the devisee in the life of the testator. The distinction between
*lapsed* and *void* legacies and devises is as old as the law on
this subject. In 13 *East*, 526, *Doe vs. Sheffield*, there was a
devise to the "sisters of J. H.," and there was but one sister
surviving *at the time the devise* was made. The heir at law
claimed the portions which would have gone to the sisters,
who were dead at the time the will was made, upon the ground
that as to them the devise was a *lapsed devise.* But it was
held by *Lord Ellenborough*, and the whole court, that it was
not the case of a *lapsed devise*, and such a devise is thus
defined: "A devise is said to be *lapsed* where the devisee dies
in the *intermediate period between the making of the will and
the death of the testator.*" In 1 *Jarman on Wills*, 294, *note*,
it is said: "There is a further distinction between a lapsed

and a void devise. In the former case the devisee dies in the intermediate time between the making of the will and the death of the testator; but in the latter the devise is void at the beginning, *as if the devisee be dead when the will is made,*" The same thing is said in 4 *Kent's Com.*, 542. See also *Lovelass on Wills*, 449, in 25 *Law Lib.*, 240. 2 *Bouv. Law Dic.*, 219, 479, *Titles, Legacy, Lapsed and Void*, 2. 2 *Jarman on Wills*, 677, 679. 1 *Harrington*, 524, *Fergusson vs. Hedges.* 5 *Pick.*, 528, *Hayden vs. Stoughton.* 4 *Iredell's Eq. Rep.*, 320, *Lindsay vs. Pleasants.* In this latter case, where the statute of North Carolina in relation to lapsed devises and legacies is almost identical in language with our act of 1810, it was held, that a devise to one not *in esse* is not within the definition of a *lapsed devise*, but was a *void devise ab initio*, and, therefore, not saved by the statute. In 11 *G. & J.*, 340, *Young vs. Robinson*, it was *conceded* by distinguished counsel in argument, that the act of 1810 did not apply to a devise to a *"man dead at the date of the will."* See, also, 7 *G. & J.*, 365, 366, *Glenn vs. Belt.* The words *"fail of taking effect,"* so much relied upon by the counsel for the appellant, are merely *explanatory* of the preceding word *"lapse,"* and mean nothing more than what is included in it. If we are to adhere to a *literal construction* of this act, no one can be said to be a *testator* until he has made a will, and no one can be strictly said to be a *legatee* or *devisee* until there is a will in existence giving him a *legacy* or a *devise.*

2nd. If this devise, therefore, is *void*, and not affected by the act of 1810, one of two results must necessarily follow:— 1st, that the portion of the estate given to Mrs. Billingsley passed by the will to her surviving brothers; or 2nd, that it fell into the estate of the testator and descended to her children as if no will had been made, in which event her children would have taken by descent from her, and the estate having been derived on the part of the mother, the uncles of the children on the mother's side would take to the exclusion of the father. In either event, therefore, the appellees are entitled to the whole fund

MASON, J., delivered the opinion of this court.

Gideon G. Tongue, the father of the appellees, died at Galveston, in the State of Texas, on the 22nd or 23rd day of September 1853, having executed his last will and testament on the 20th day of the same month. After the bequest of a single legacy, the will concluded with the following words: "The balance of my estate to be divided among my heirs, Ann C. Billingsley, Gideon Denny Tongue and Thomas O. Tongue, being my children."

Ann C. Billingsley, who was the wife of the appellant, had died on the 19th of September, before the date of the will. She left three infant children who survived their grandfather, the testator, but died within ten days after his decease.

After the death of said Gideon G. Tongue, a bill was filed for the sale of certain real estate situated in Anne Arundel county, Maryland, in which said Gideon G. had owned an undivided interest. Said property was sold by trustees appointed by the decree in said cause;—and of the sales, the sum of $3342.17 would have been the distributive share of said Gideon G. if now living. The appellant claims the one-third part of this amount, averring, that said proportion would have belonged to the infant children of his wife, the said Ann C. Billingsley, under the will of her father, Gideon G. Tongue, and that he, the said appellant, is now entitled to the same as the heir at law of his said deceased children.

Previous to the passage of the acts of 1810, ch. 34, sec. 4, and 1832, ch. 295, there could have been no doubt that the devise to Mrs. Billingsley would have been unavailing. But it has been argued with force and ability, that the terms of the act of 1810 are sufficiently comprehensive to embrace, not only a devise to a party dying after the making of the will, but before the death of the testator, but also a case, like the present, of a devise to one *dead at the time* the will was executed.

The better authorities concur, that there is a manifest distinction between *a void* and a *lapsed* legacy; and in 1*st Jarman on Wills*, 293, *(note,)* the very cases put above are given as illustrations of the distinction between "*a lapsed and a void devise.*"  "In the former case, the devisee dies in the inter-

mediate time between the making of the will and the death of the testator; but, in the latter case, the devise is void at the beginning, as if the devisee be dead when the will was made."

This being a void, and not a lapsed legacy, the inquiry arises, whether the act of 1810 embraces void legacies? The act provides, that *no devise, &c., shall lapse or fail of taking effect, by reason of the death of the devisee in the lifetime of the testator.* This language clearly imports the happening of some future contingency to defeat the devise, which, without the happening of such contingency, would have been valid and effectual. The term, "lapse," could have had no other meaning, and is perhaps the most proper, if not the only word that could be employed to convey that idea. But it is said the additional expression, "fail of taking effect," is broad enough to embrace a case of a void, as well as a lapsed devise. These words were evidently used only to repeat, by explaining and amplifying, the same idea as that conveyed by the word *lapse*, and the effort to make that plainer, which was plain before, it seems has only had the effect, if it has any, to make it obscure.

If, therefore, the devise was void at the beginning, nothing was necessary, such as the death of the devisee, to make it *fail of taking effect*, but if something happening in the future was necessary to make *it fail*, it was not void *ab initio*.

The devise being void and ineffectual to pass any property, the interest intended for Mrs. Billingsley either passed under the general clause of the will to the two living devisees, or it fell back into the estate and descended to the heirs generally. Either assumption would lead to the result of defeating the claim of the present appellant. If the former view be correct, of course the two sons of the testator took the whole; but if the latter, the third of the residuum which was intended for Mrs. Billingsley, descended to the heirs, and upon the death of her three children, their interest, whatever it was, having descended through their mother, should be inherited by their uncles, (the mother's brothers,) and not by their father.

*Decree affirmed with costs.*