KARL L. KELLER AND LEONA G. KELLER

*him wife, et al.*

*v.*

DIXIE ELLEN KELLER, WILLIAM WARD KELLER,

FELNORA GRACE KELLER, CHARLES DICKEN KELLER

AND MONICA KAY KELLER

(No. 14866)

Decided February 24, 1982.

*Sponaugle & Sponaugle, George I. Sponaugle and George I. Sponaugle II,* for appellants.

*James E. Ansel* for appellees.

MCHUGH, JUSTICE:

This action is before this Court upon the petition of Dixie Ellen Keller, et al., for an appeal from the final order of the Circuit Court of Hardy County, West Virginia. Pursuant to that order, entered on September 28, 1979, the circuit court entered judgment against the appellants in a civil action involving an interpretation and construction of the will of William Keller, deceased. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel.

The facts in this action are not in dispute. William Keller and his wife had eight children.[1] On August 7, 1942, a son of William Keller by the name of George W. Keller and the wife of George W. Keller adopted a son. That adopted son was renamed George Richard Keller.

On April 7, 1959, William Keller, then a widower, executed a will. The provisions of that will at issue before the circuit court and this Court stated as follows:

THIRD: I give, devise and bequeath all the rest and residue of my property in equal shares to my children . . . provided that the share of my estate due my son, George W. Keller, shall be placed in trust as hereinafter provided.

I further direct that my children meet and refrain from making sale of any of my real estate, but that they attempt to divide the same in equal shares and under proper conditions, except that I direct that Karl L. Keller and Emma K. Halterman, as trustees for George W. Keller, be authorized and empowered to speak and act for my son, George W. Keller, in making the proper division, it being my intention that whatever is due him shall be placed in the hands of said trustees in the form of cash, bonds, stocks or secured notes.

FOURTH: As to the share of my estate due my son, George W. Keller, I do now direct that the same be reduced to cash and placed in the hands of Karl L. Keller and Emma K. Halterman as trustees; and I further direct that said Trustees invest the said sum of money for the use and benefit of George W. Keller and that they pay the interest so received from said fund to my son, George W. Keller, semi-annually or in such other regular payments as they may see fit. I further empower and authorize said Trustees to expend from the principal or corpus for the use and benefit of George W. Keller in the event that such

[1] The eight children of William Keller and his wife were as follows: Ann Keller Heisman, Helen Keller Ours, Mary Alice Keller Ruckman, Emma Keller Halterman, George W. Keller, Anton M. Keller, Karl L. Keller and Willie B. Keller.

expenditures are needed for emergency purposes, and in this connection I direct that medical expenses, hospital expenses, nursing expenses and extreme poverty on part of George W. Keller be considered as emergency matters. The said Trustees are to have a wide discretion in this connection and the exercise of this discretion on their part shall be final. In the event that either of said Trustees should predecease said George W. Keller, then I direct that the surviving Trustee shall continue to carry out the provisions of this trust. I further direct that should George W. Keller die while the said trust fund is in existence that the said Trustees shall pay his funeral expenses from said fund and any balance remaining in said trust fund to pass outright to such of the brothers and sisters of said George W. Keller as are then living, share and share alike. Said Trustees are empowered and authorized in order to obtain a reasonable return on the principal or corpus to invest the trust fund in stocks, bonds or real estate. I further provide that said Trustees shall receive a commission of 5% on the original trust fund and on income received therefrom for their services in administering said fund.

On March 15, 1961, William Keller executed a codicil to the will by which William Keller directed that a certain amount of money be given to a church. The provisions of that codicil are not relevant to the provisions in question of the will.

Both George W. Keller and his adopted son, George Richard Keller, predeceased the testator, William Keller. George W. Keller died on October 21, 1964, and George Richard Keller died on May 31, 1966. George Richard Keller was survived by six children, Dixie Ellen Keller, William Ward Keller, Felnora Grace Keller, Charles DickenKeller, Monica Kay Keller and David Richard Keller. Those six children were defendants in the action before the circuit court and, with the exception of David Richard Keller, are the appellants before this Court.

On May 9, 1970, William Keller died and the will and codicil were admitted to probate.

Subsequent to the death of William Keller, a portion of his real estate was sold by the appellees, one-eighth of the proceeds from which sale, representing deceased son George W. Keller's share in the estate, was placed in escrow pending the outcome of this litigation.

On October 10, 1978, the living brothers and sisters of George W. Keller and others instituted an action in the Circuit Court of Hardy County against the appellants, the six grandchildren of George W. Keller. In this action the plaintiffs, appellees before this Court, assert that they, rather than the appellants, are entitled to the one-eighth interest of George W. Keller in the estate of the testator, William Keller. Essentially, the appellees assert that the trust described in the will of the testator did not fail and that, as a result of the death of George W. Keller, the appellees became the beneficiaries of the trust.

The appellants, on the other hand, contend that the trust never came into existence, and, consequently, the appellants, as successors to George W. Keller, are entitled prusuant to the will and by operation of law to George W. Keller's one-eighth interest in the estate.

By order entered on September 28, 1979, the circuit court held that the appellants take nothing either from the estate of William Keller or from the proceeds of the sale of the testator's real estate.

Specifically, the circuit court held that the will is ambiguous inasmuch as the will does not cover the factual situation in existence at the time of the testator's death. In holding in favor of the appellees, the circuit court in its opinion of July 9, 1979, stated as follows:

> The Court finds as a matter of fact from the stipulated family history and the terms of the Will of William Keller, that William Keller intended that the benefits from this one-eighth of his estate would be for the use of George W. Keller during his lifetime, and that such benefits would not extend to George W. Keller's wife or adopted son or descendants of the adopted son after the death of his son, George W. Keller, and that after the death

of the natural son, George W. Keller, the benefits from that one-eighth share, such as might remain, would go to his natural children then living.

. . . .

Technically, the spendthrift trust may never have came [sic] into existence because of the death of the primary beneficiary before it was created. However, in a very real sense, this trust had a life beneficiary, George W. Keller, and remaindermen beneficiaries, the class being composed of the brothers and sisters of the life beneficiary living at the time of his death, and so, this trust did not fail.

In the final order of the circuit court, after stating that the appellants take nothing from the testator's estate, the circuit court divided George W. Keller's one-eighth interest in the proceeds from the sale of the testator's real estate among those children living at the time of George W. Keller's death and their successors.[2]

The appellants assert that pursuant to this State's anti-lapse statute, they are entitled to the one-eighth interest of George W. Keller in the estate of the testator and further to the one-eighth share of George W. Keller in the proceeds from the sale of the testator's real estate.

---

[2] The children of William Keller living at the time of George W. Keller's death were Ann Keller Heishman, Helen Keller Ours, Mary Alice Keller Ruckman, Emma Keller Halterman, Anton M. Keller and Karl L. Keller. After the death of George W. Keller, Anton M. Keller died leaving Trixie V. Keller, Phyllis Keller Michael, Robert A. Keller and Nellie C. Keller as devisees. Pursuant to the order of the circuit court, the devisees of Anton M. Keller shared in the distribution of George W. Keller's one-eighth share in the proceeds from the sale of the testator's real estate.

It should be noted, however, that, as indicated in the record, the testator's son, Willie B. Keller, was not living at the time of the death of George W. Keller. As reflected in the order of the circuit court, the heirs of Willie B. Keller, namely William L. Keller, Branson G. Keller and Ralph K. Keller, did not share in George W. Keller's one-eighth share of the proceeds from the sale of the testator's real estate.

That statute, *W. Va. Code*, 41-3-3 [1931] provides as follows:[3]

> If a devisee or legatee die before the testator, or be dead at the time of making of the will, leaving issue who survive the testator, such issue shall take the estate devised or bequeathed, as the devisee or legatee would have done if he had survived the testator, unless a different disposition thereof be made or required by the will. And if the devise or bequest be made to two or more persons jointly, and one or more of them die without issue, or be dead at the time of the making of the will, the part of the estate so devised or bequeathed to him or them shall not go to the other joint devisees or legatees, but shall, in the case of a devise, descend and pass to the heirs at law, and, in the case of a bequest, go and pass to the personal representative, of the testator, as if he had died intestate, unless the will otherwise provides.

Moreover, *W. Va. Code*, 41-3-4 [1931], during the period in question, provided as follows:

> Unless a contrary intention shall appear by the will, such real or personal estate, or interest therein, as shall be comprised in any devise or bequest in such will, which devise or bequest shall fail or be void, or be otherwise incapable of taking effect, shall, if the estate be real estate, be included in the residuary devise, or, if the estate be personal estate, in the residuary bequest, if any residuary devise or bequest be contained in such will, and, in the absence of such residuary devise or bequest, shall pass as in case of intestacy.

---

[3] This State's anti-lapse statute, *W. Va. Code*, 41-3-3 [1931], is not new to statutory law. As the 1860 Code of Virginia provided: "If a devisee or legatee die before the testator, leaving issue who survive the testator, such issue shall take the estate devised or bequeathed, as the devisee or legatee would have done, if he had survived the testator, unless a different disposition thereof be made or required by the will."

In *Hester v. Sammons*, 171 Va. 142, 198 S.E. 466 (1938), the testator died in 1936 leaving a will in which his sister, Mary Bell Angell, was named as a beneficiary. In a separate clause in the will, the testator named another as residuary legatee. The provision of the will concerning Mary Bell Angell stated as follows:

> I give and bequeath to my executor and trustee, hereinafter named, the sum of ten thousand dollars ($10,000), *in trust*, nevertheless, to keep the same invested, with full power, in its discretion, to change the investment or investments from time to time, and to pay the net income thereof to my sister, Mary Bell Angell, of Houston, Texas, and to provide for the payment in cash to my said sister, Mary Bell Angell, out of the principal, the sum of two hundred and fifty dollars per month until the said sum of ten thousand dollars is exhausted, it being my intention and express direction that the said sum of two hundred and fifty dollars ($250) per month shall be paid to my said sister, Mary Bell Angell, each and every month, together with the net income derived from the remainder of the principal in the hands of my trustee.

198 S.E. at 466.

In *Hester*, Mary Bell Angell predeceased the testator and left as her distributees two daughters and a son. The question in that action was whether the testamentary share of Mary Bell Angell should go to her distributees and their successors or to the residuary legatee named in the will. The will was silent upon that question. Before the Supreme Court of Appeals of Virginia was an anti-lapse statute similar to the statute, *W. Va. Code*, 41-3-3 [1931], before this Court.

In *Hester*, the Court applied the anti-lapse statute and held in favor of Mary Bell Angell's distributees and their successors. As the Court stated:

> These distributees of Mrs. Angell take, just as they would have taken had their names been inserted in the ninth clause of said will in her

room and stead, and, of course, subject to the conditions under which she would have taken had she survived. This will was written before Mrs. Angell died. The provisions for her benefit are not therefore void ab initio. Therefore, we are dealing with a lapsed and not with a void legacy.

198 S.E. at 467.

Clearly, one purpose of the will before this Court was that the testator, William Keller, intended to create a spendthrift trust for his son, George W. Keller. As recognized in *Hoffman v. Beltzhoover*, 71 W. Va. 72, 74, 76 S.E. 968, 969 (1913): "Spendthrift trust is the term commonly applied to those trusts that are created with a view of providing a fund for the maintenance of another, and at the same time securing it against his own improvidence or incapacity for self-protection." In *Hoffman*, this Court held in syllabus point 2 as follows:

> To create a spendthrift trust it is not essential that the instrument should denominate the beneficiary a spendthrift, or give reasons for creating the trust, or contain all restrictions and qualifications incident to such trust, or contain an express declaration that the interest of the *cestqui que trust* in the trust estate shall be beyond the reach of creditors, if the intention of the testator or donor to create such trust is clearly disclosed by the instrument as a whole.

However, the beneficiary of that spendthrift trust, George W. Keller, predeceased the testator. No specific provision was expressed in the will in anticipation of the death of that beneficiary. Consequently, this Court must determine, as did the circuit court, what disposition should be made of the one-eighth interest of George W. Keller.[4]

In making that determination, this Court recognizes that "[t]he cardinal rule in the construction of wills is that

---

[4] As the syllabus point provides in *Dingess v. Drake*, 135 W. Va. 502, 64 S.E.2d 601 (1951): "Though the will is ambiguous, this Court will declare the meaning and give effect to the intention of the testator."

the testator's intention controls, unless it is contrary to some positive rule of law or principle of public policy." *Emmert v. Old National Bank of Martinsburg*, 162 W. Va. 48, 246 S.E.2d 236, 241 (1978). Often, judicial precedent is of little value in analyzing the language of wills.[5] Consequently, the courts turn to the many rules of construction which have evolved from litigation in this area, Nevertheless, the necessity of applying such rules of construction diminishes to the extent that the intention of the testator is readily apparent from a plain reading of the will. As this Court held in Syl, pt 3, *Couch v. Eastham*, 29 W. Va. 784, 3 S.E. 23 (1887); "When the will affords no satisfactory clue to the real intentions of the testator, the court must from necessity resort to legal presumptions and rules of construction. But such rules yield to the intention of the testator apparent in the will, and have no application and when the intention thus appears."

Upon a careful consideration of the will of William Keller, this Court is in agreement with the Circuit Court of Hardy County that the testator intended that the one-eighth share of George W. Keller would not extend to the appellants in the event of George W. Keller's death. Rather, we are of the opinion that, as the will indicates, such one-eighth share, because of George W. Keller's death, went to George W. Keller's brothers and sisters then living. Stated another way, we hold that this State's anti-lapse statute, *W. Va. Code*, 41-3-3 [1931], does not cause the share of George W. Keller to go to the appellants.

The anti-lapse statute, *W. Va. Code*, 41-3-3 [1931], is applicable and operates for the benefit of the appellants, unless, as the statute provides, a "different disposition"

---

[5] As Vol. 1 Harrison *Wills and Administration* § 246 (Michie 1960) states, in part:

It has been said in quite a number of cases that judicial precedents are of little value in the construction of wills. It is fairly true, as has been said, that 'No will has a twin brother.' This is correct, except in so far as the judicial precedents establish general rules of construction or furnish a generally accepted definition of words or phrases.

be made or required by the will. We believe such "different disposition" was provided in the will and that the acquisition of the share in question by the appellees was required. This action, therefore, is unlike the *Hester* case, *supra,* in which case no different disposition of the testator's property could be discerned, and, because of the anti-lapse statute, the distributees of the deceased beneficiary acquired an interest.

In this action, the appellants are not mentioned in the will. Moreover, all of the testator's children, including George W. Keller, are included in the will's residuary clause. All eight children of the testator are mentioned in that residuary clause by name. In a subsequent provision of the will, the testator stated: "I further direct that should George W. Keller die while the said trust fund is in existence that the said Trustee shall pay his funeral expenses from said fund and any balance remaining in said trust fund to pass outright to such of the brothers and sisters of said George W. Keller as are then living, share and share alike."

*W. Va. Code,* 41-3-1 [1931], provides as follows: "A will shall be construed, with reference to the estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will." Obviously, at the time of the death of the testator there was no reason to establish a spendthrift trust. George W. Keller had predeceased the testator. The trust provisions of the will had no specific application. However, we believe that the trust provisions of· the will expressed a general intent that the brothers and sisters surviving George W. Keller would take his share. It is clear that had the trust been in existence after the death of the testator, such brothers and sisters, rather than the appellants, would have taken George W. Keller's share.

For the above reasons, therefore, the final order of the Circuit Court of Hardy County is hereby affirmed.

*Affirmed.*