541 S.E.2d 334

**Stephen KUBICZKY, Plaintiff Below, Appellant,**

v.

**WESBANCO BANK WHEELING, as Executor of the Estate of Dick Harmath; Anna Harmath Kovacs; and Helen Harmath Laitos, Defendants Below, Appellees.**

No. 27665.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 6, 2000.

Decided Nov. 2, 2000.

Ronald M. Musser, Esquire, Musser & McArdle, Wheeling, West Virginia, for Appellant.

Gail W. Kahle, Esquire, Wheeling, West Virginia, Attorney for Appellee Wesbanco.

Paul C. Camilletti, Esquire, Camilletti, Sacco & Pizzuti, Wheeling, West Virginia, Attorney for Appellees Kovacs and Laitos.

SCOTT, Justice:

This is an appeal by Stephen Kubiczky (hereinafter "Appellant") from a November 12, 1999, decision of the Circuit Court of Ohio County in favor of the Appellees, Anna Harmath Kovacs and Helen Harmath Laitos (hereinafter "Appellees"). The Appellant maintains that the lower court erred by finding that the Appellees, great aunts of the Appellant, were entitled to the one-third share of the residuary estate of Mr. Dick Harmath which had been bequeathed to the Appellant's deceased grandmother, Mrs. Mary Harmath Kish. The Appellant contends that West Virginia Code 41–3–3 (1997),[1] the antilapse statute, governs the resolution of this matter and compels the conclusion that the Appellant is entitled to the one-third share of the residuary estate which had been bequeathed to his deceased grandmother. We agree with the contentions of the Appellant, reverse the decision of the lower court, and remand this matter for the entry of an order providing that the one-third share of the residuary estate to which Mrs. Mary Harmath Kish would have been entitled shall

---

1. West Virginia Code § 41–3–3, the antilapse statute, is entitled "[d]eath of devisee or legatee before testator" and provides as follows:

If a devisee or legatee die before the testator, or be dead at the time of making of the will, leaving issue who survive the testator, such issue shall take the estate devised or bequeathed, as the devisee or legatee would have done if he had survived the testator, unless a different disposition thereof be made or required by the will. And if the devise or be-

quest be made to two or more persons jointly, and one or more of them die without issue, or be dead at the time of the making of the will, the part of the estate so devised or bequeathed to him or them shall not go to the other joint devisees or legatees, but shall, in the case of a devise, descend and pass to the heirs at law, and, in the case of a bequest, go and pass to the personal representative, of the testator, as if he had died intestate, unless the will otherwise provides.

pass to her issue pursuant to West Virginia Code § 41-3-3.

## I.  Facts

Mr. Dick Harmath, the Appellant's great uncle, executed a will on December 12, 1975. Unmarried and without issue, Mr. Harmath provided in his will that all his debts were to be paid, that he was to be buried in a crypt in Wheeling, West Virginia, and that $4,000.00 was to be given to St. Joseph's Cathedral for Masses.  In apparent complete disposition of the estate, the will also provided as follows:

> All the rest, residue and remainder of my estate, of all kind and description and wheresoever situate, I give, devise, and bequeath to be divided equally among my three (3) sisters, Anna Harmath Kovacs [address omitted], Mary Harmath Kish [address omitted], and Helen Harmath Laitos [address omitted], share and share alike, to the express exclusion of any other person or persons.

Mrs. Mary Harmath Kish, grandmother of the Appellant, died on November 28, 1988, leaving the Appellant as her sole lineal descendant.[2]  The testator, Mr. Harmath, died on December 10, 1998.  The will was admitted to probate, and Wesbanco Bank Wheeling (hereinafter "Wesbanco") was the Executor.  Having been advised by counsel for Wesbanco that he was not entitled to his grandmother's share of the estate, the Appellant filed his proof of claim against the estate on March 1, 1999, seeking to receive the one-third share of the residuary estate devised and bequeathed to Mrs. Mary Harmath Kish, pursuant to the provisions of West Virginia's antilapse statute, West Virginia Code § 41-3-3.  The Appellant contended that the tes-

tator's inclusion of the phrase "to the express exclusion of any other person or persons" was insufficient to defeat the operation of the antilapse statute.

The Fiduciary Commissioner determined that the Appellant should receive the share to which his grandmother was entitled, reasoning that the antilapse statute controlled the disposition of the estate.  The Commissioner explained: "Looking at the Testator's Will as a whole, your Commissioner does not believe that the language 'to the express exclusion of all others' by the Testator is 'condition precedent' or a 'different disposition' to defeat the operation of the anti lapse statute...."

The Appellant filed a declaratory judgment action in the lower court and moved for summary judgment.  The lower court entered an order dated November 12, 1999, denying the Appellant's motion and concluding that the disputed share constituted a void gift under West Virginia Code § 41-3-4 (1997)[3] and should be distributed to the Appellees rather than the Appellant.  Specifically, the lower court stated:

> It is the opinion of the Court that testator's language at the residuary clause of his Will, that his residue go equally to his three sisters, "to the express exclusion of any other person or persons", is a clear and unambiguous expression of his intent which permits only his surviving sisters as his residuary beneficiaries, and constitutes a testamentary direction which controls the distribution of the residue of his estate.  Therefore, when his sister Mary Harmath Kish predeceased him, it caused the be-

---

**2.**  Mrs. Kish had two children, Coleman Kish and Helen Kish Kubiczky.  Coleman Kish died without issue in 1984.  The Appellant's mother, Helen Kish Kubiczky, also died in 1984.

**3.**  West Virginia Code § 41-3-4, known as the void gift statute, is entitled "[f]ailure of invalidity of devise or bequest," and provides as follows:

> Unless a contrary intention shall appear by the will, such real or personal estate, or interest therein, as shall be comprised in any devise or bequest in such will, which devise or bequest shall fail or be void, or be otherwise incapable of taking effect, shall, if the estate be real estate, be included in the residuary devise,

or, if the estate be personal estate, in the residuary bequest, if any residuary devise or bequest be contained in such will, and, in the absence of such residuary devise or bequest, shall pass as in case of intestacy.  However, when a devise or bequest shall be included in a residuary clause of the will, which devise or bequest shall fail or be void or be otherwise incapable of taking effect, it shall not pass as in case of intestacy but shall pass to the remaining residuary devisees or legatees or devisee or legatee, if any there be, in proportion to their respective shares or interests in the residue.

quest of her residuary share to be incapable of taking effect.

These events fall within the provisions of West Virginia Code 41–3–4 which provides that when a residuary bequest is incapable of taking effect the bequest passes to the remaining residuary legatees, in terms of this case—Anna Harmath Kovacs and Helen Harmath Laitos.

The Appellant appealed the lower court's determination to this Court, contending that the phrase "to the express exclusion of any other person or persons" did not constitute a "different disposition" defeating the operation of the antilapse statute. Such reference, according to the Appellant, related to third parties living at the time the will was written, such as those claiming to be illegitimate children of the testator or claiming to have been equitably adopted by the testator, rather than to lineal descendants of a predeceased sister.

The Appellant also emphasizes the testator's failure to provide an alternate distribution should one or all of the sisters predecease him. The Appellant discusses the significance of the fact that the testator, assisted by legal counsel in drafting the will, did not include a clause stating that only the surviving sister or sisters would be entitled to the residuary. Absent some alternate disposition, the Appellant argues that the death of a beneficiary prior to the death of the testator triggers the application of the antilapse statute and that the void-gift statute is consequently not implicated.

The Appellees maintain that the testator evidenced his intention for an alternate distribution by excluding all other persons from his will. They argue that such an alternate distribution defeats the operation of the antilapse statute and renders the gift to the deceased Mrs. Kish void under W. Va.Code § 41–3–4. We disagree.

## II. Standard of Review

■ We review this matter *de novo*, pursuant to our typical standard of review for declaratory and summary judgment actions as enunciated in syllabus point three of *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995), as follows: "A circuit court's entry of a declaratory judgment is reviewed *de novo.*" We explained in *Cox* that "because the purpose of a declaratory judgment action is to resolve legal questions, a circuit court's ultimate resolution in a declaratory judgment action is reviewed *de novo . . . ." Id.* at 612, 466 S.E.2d at 463. In *Poole v. Berkeley County Planning Commission*, 200 W.Va. 74, 488 S.E.2d 349 (1997), this Court acknowledged that "both the entry of a summary judgment and the entry of a declaratory judgment are reviewed by this Court *de novo." Id.* at 77, 488 S.E.2d at 352.

## III. History of Antilapse Statutes

Where an intended devisee predeceases the testator of a will, the devise is considered lapsed, based upon the implied assumption that an intended beneficiary must survive the testator. At common law, such lapsed devise was either treated as intestate property or was distributed among the residuary legatees. *Simpson v. Piscano*, 288 Md. 560, 419 A.2d 1059 (1980) (citing 1 *Jarmin on Wills* 438 (8th ed. London 1951) (1st ed. London 1841–2–3)); *Billingsley v. Tongue*, 9 Md. 575 (1856); 6 J. Bowe and Douglas H. Parker, *Page on Wills* s 50.10 (Rev. ed.1962). To present such a harsh and presumably unintended result, legislatures of the United States and Great Britain [4] in the nineteenth century crafted statutes designed to prevent such devises from lapsing. These "antilapse" statutes generally provided that the property devised would descend to the issue of the

---

**4.** According to *Simpson,* the English antilapse statute, section 33 of the Wills Act of 1837, provided:

"Where any person, being a child or other issue of the testator to whom any real or personal estate shall be devised or bequeathed for any estate or interest not determinable at or before the death of such person, shall die in the lifetime of the testator leaving issue, and any such issue of such person shall be living at the time of the death of the testator, such devise or bequest shall not lapse, but shall take effect as if the death of such person had happened immediately after the death of the testator, unless a contrary intention shall appear by the will."

419 A.2d at 1065 n. 3 (quoting § 33 of the Wills Act of 1837).

predeceased devisee unless a contrary interest was expressed. *Hemsley v. McKim*, 119 Md. 431, 87 A. 506 (1913). Such legislative construction achieved transfer of the legacy to the legatee's heirs rather than the testator's heirs and prevented intestacy or escheat to the state. *Mayor & City Council v. White*, 189 Md. 571, 56 A.2d 824, 826 (1948). Through such means, the statutes effected " 'the probable intention of the average testator,' " *In re Estate of Christian*, 65 Haw. 394, 652 P.2d 1137 (1982) (citing T. Atkinson, *Law of Wills* § 140, at 779 (2d ed.1953)).

While all states, except Louisiana, have some version of an antilapse statute, the precise language and effect of the statutes vary greatly from state to state. A frequently litigated issue in the antilapse context focuses upon the manner in which a testator who desires to avoid application of the statute must express such intent. In order to prevent application of the statute, courts have uniformly held that a testator must clearly and unequivocally indicate his intent that the statute not apply. *In re Estate of McCarthy*, 256 Iowa 66, 126 N.W.2d 357, 361 (Iowa 1964). "To defeat the operation of the antilapse statute, the will must contain plain and clear language indicating that the testator intended a different disposition of his or . her property should a named beneficiary die first." *Jacobsen v. Flathe*, 1997 WL 576339, at *3 (Tenn.Ct.App.1997); *see In re Estate of Renner*, 895 S.W.2d 180, 182 (Mo.Ct.App. 1995); *Royston v. Watts*, 842 S.W.2d 876, 879 (Mo.Ct.App.1992). "Where a will does not clearly indicate that the person who made it intended to. disinherit a predeceased legatee in favor of a surviving legatee, the antilapse statute works to save the deceased legatee's gift for his or her heirs." *Jacobsen*, 1997 WL 576339, at *3.

In *Early v. Bowen*, 116 N.C.App. 206, 447 S.E.2d 167 (1994) *review denied*, 339 N.C. 611, 454 S.E.2d 249 (1995), the North Carolina court succinctly stated: "A testator who desires to prevent lapse must express such intent or provide for substitution of another devisee in language sufficiently clear to indicate what person or persons testator intended to substitute for the legatee dying in his

lifetime; otherwise the anti-lapse statute applies." *Id.* at 170.

■  Courts have disagreed, however, regarding precisely what language is sufficient to convey such contrary intent. If, for example, a testator directly references the antilapse statute and expressly states that the statute is not to be applied to the devises in his will, such expression of contrary intent is obviously sufficient to avoid operation of the statute. Other expressions of contrary intent, however, are presented with less clarity, and litigation is required to determine whether the specific language suffices to prevent operation of the statute. An express requirement of survivorship of the devisee or a designation of an alternative disposition if any devisee predeceases the testator have been deemed sufficient to defeat application of the statute. *See e.g. In re Estate of Burruss*, 152 Mich.App. 660, 394 N.W.2d 466, 468 (1986) (bequesting estate to daughters " 'or to the survivor or survivors of them' "); *In re Robinson's Will*, 37 Misc.2d 546, 236 N.Y.S.2d 293, 295 (N.Y.Sur.Ct.1963) (bequesting estate to brothers and sisters " 'or to the survivor or survivors of them' "); *In re Estate of Farris*, 865 P.2d 1275, 1278 (Okl.Ct. App.1993) (bequesting estate to brothers and sisters " 'or to survivor[s] of them'.").

Throughout the development of standards surrounding the application of antilapse statutes, several consistent principles have emerged. Primary among these is the presumption of testator knowledge regarding the existence and operation of the antilapse statute. In analyzing the particular language utilized by the testator, courts have generally applied a presumption that the testator was aware of the existence and operation of the antilapse statute and that he drafted the will in accordance with such understanding. *Martin v. Summers*, 101 Ohio App.3d 269, 655 N.E.2d 424 (1995). In *In re Estate of Ricklefs*, 211 Kan. 713, 508 P.2d 866 (1973), the Kansas court reasoned:

Lawyers and testators of the state should be able to rely with confidence upon rules of property in preparing and executing wills, and be assured the intent of the testator as expressed therein will be carried out, instead of a will being made the

instrument of introducing a vague discretionary law formed upon the occasion from the circumstances, to which no precedent can be applied, and from which no rule can be deduced.

*Id.* at 873.

Courts have also uniformly recognized the necessity of broad and liberal construction of the antilapse statutes. In *In re Estate of Braun,* 256 Iowa 55, 126 N.W.2d 318 (1964), for instance, the Iowa court reasoned that the antilapse statute "was enacted to preserve the devise for those who would presumably have enjoyed its benefits had the deceased devisee survived the testator and died immediately thereafter." *Id.* at 320. To achieve that purpose, the Iowa court provided the statute a broad and liberal construction. *Id. See also Brundige v. Alexander,* 547 S.W.2d 232, 234 (Tenn.1976). The compulsion toward broad and liberal construction was summarized as follows in *In re Estate of Kerr,* 433 F.2d 479 (D.C.Cir.1970):

> As an expedient to mitigate the rigors of common law doctrine, the antilapse statute is to be interpreted liberally with a view to attainment of its beneficent objective. To render the statute inoperative, a purpose inconsistent with that objective must fairly appear, and from the terms of the will itself.

*Id.* at 483 (footnotes omitted).

### IV. Burden of Proof

In presenting arguments regarding whether the antilapse statute is applicable to a particular factual scenario, courts have also placed the burden of demonstrating that the antilapse statute should not operate upon the party contending that it is inapplicable. Doubts are resolved in favor of normal operation of the statute, as liberally construed. *In re Estate of Niehenke,* 58 Wash.App. 149, 791 P.2d 562, 564 (1990), *aff'd,* 117 Wash.2d 631, 818 P.2d 1324 (1991). *See Nicholson v. Fritz,* 252 Iowa 892, 109 N.W.2d 226, 227 (Iowa 1961) ("The burden was upon plaintiffs to show the 'contrary intent' claimed by them."); *Fischer v. Mills,* 248 Iowa 1319, 85 N.W.2d 533, 537 (Iowa 1957) (holding "when a litigant depends upon the contrary intention clause ... the burden of proof rests

upon such party to the action."); *Benz v. Paulson,* 246 Iowa 1005, 70 N.W.2d 570, 574 (Iowa 1955) ("The burden was upon the appellant to show from the terms of the will a 'contrary intent'; that is, that the anti-lapse statute did not apply." ').

### V. West Virginia Antilapse Statute

The antilapse statute adopted by the legislature of this state, West Virginia Code § 41–3–3, was discussed by this Court in *Mrocko v. Wright,* 172 W.Va. 616, 309 S.E.2d 115 (1983). In *Mrocko,* the testator left all her property to her husband, her sister Mrs. Tomich, and her sister Mrs. Wright. The testator provided that her two sisters, on a share and share alike basis, were to receive certain specified devises. *Id.* at 617, 309 S.E.2d at 116. The particular provision of the will relevant to the operation of the antilapse statute and determined to constitute a contrary intention negating the effect of the antilapse statute provided as follows: " 'This is providing that all named are living at my death.' " ' *Id.* at 617, 309 S.E.2d at 117. The testator's husband and her sister Mrs. Tomich predeceased her. *Id.*

The lower court held in *Mrocko* that Mrs. Wright, as the sole surviving sister, was the beneficiary under the will. The appellants contended on appeal that the antilapse statute entitled them to one-half of the residuary estate. *Id.* at 618, 309 S.E.2d at 117. This Court affirmed the determination of the lower court, finding that the testator's provision, " 'This is providing that all named are living at my death' " applied to all of the named beneficiaries in the will. *Id.* This was in essence a survivorship clause creating a "different disposition" negating the application of the antilapse statute. Because the bequest was not saved by the antilapse statute, the void gift statute was invoked, and the failed devise was added to the residuary estate which permitted Mrs. Wright to receive the entire estate under the residuary clause. *Id.* at 619, 309 S.E.2d at 118.

The case *sub judice* differs markedly from *Mrocko.* The testator in *Mrocko* included an express survivorship requirement in the provision devising to the beneficiaries "providing that all named are living at my death." *Id.*

at 617, 309 S.E.2d at 117. The will under scrutiny in the present case contains no such provision; nor does it contain any alternate disposition of the portion of the estate which was to be given to Mrs. Mary Harmath Kish.

*Keller v. Keller,* 169 W.Va. 372, 287 S.E.2d 508 (1982), is also illuminating as to the incorporation of an express alternate distribution provision in a trust. In *Keller,* this Court encountered a scenario in which a testator had willed his property in equal shares to his eight children. The testator had also provided a spendthrift trust for the share of one of the children and expressly provided that on the death of that child his share should go to the other surviving children, all named individually in the residuary clause. Specifically, the testator provided:

I further direct that should George W. Keller die while the said trust fund is in existence that the said Trustee shall pay his funeral expenses from said fund and any balance remaining in said trust fund to pass outright to such of the brothers and sisters of said George W. Keller as are then living, share and share alike.

*Id.* at 374, 287 S.E.2d at 509.

The child for whom the spendthrift trust had been created predeceased the testator. This Court, analyzing the antilapse statute, concluded that the deceased child's share should pass to the surviving children. While "[t]he trust provisions of the will had no specific application[,]" because the child for whom the trust had been created had predeceased the testator, this Court found that the

trust provisions of the will expressed a general intent that the brothers and sisters surviving George W. Keller would take his share. It is clear that had the trust been in existence after the death of the testator, such brothers and sisters, rather than the appellants, would have taken George W. Keller's share.

169 W.Va. at 381, 287 S.E.2d at 513. Based upon the obviously intended alternate distribution, the antilapse statute did not apply to transfer the disputed share to George W. Keller's lineal descendants. *Id.*

We also adhere to the firmly established legal presumption against intestacy. We explained in *Cowherd v. Fleming,* 84 W.Va. 227, 100 S.E. 84 (1919) that "[t]he presumption is that when a testator makes a will he intends to dispose of his whole estate, and if possible the will should be so interpreted as to avoid total or partial intestacy." *Id.* at 231, 100 S.E. at 86. In syllabus point four of *Rastle v. Gamsjager,* 151 W.Va. 499, 153 S.E.2d 403 (1967), this Court explained: "Where a will is made it is presumed that the testator intended to dispose of his whole estate, and such presumption should prevail unless the contrary shall plainly appear." In syllabus point eight of *In re Teubert's Estate,* 171 W.Va. 226, 298 S.E.2d 456 (1982), this Court succinctly stated the "[t]he law favors testacy over intestacy."

The presumption against intestacy is quite significant in the present case. If this Court were to adopt the reasoning of the Appellees and carry that argument to its logical conclusion, escheat to the state would have resulted if all three residuary beneficiaries had predeceased the testator. In other words, in such event, if the language utilized in the will, "to the express exclusion of any other person or persons," were interpreted to constitute sufficient intent of a "different disposition" and thereby deemed to negate the operation of the antilapse statute, escheat to the state would have been the result—a result which would violate all established principles of testamentary interpretation. *See* W. Va.Code § 41-3-3.

This Court summarized the effect of the antilapse statute in syllabus point one of *Mrocko,* as follows: "W.Va.Code 41-3-3 [1923] provides that the heirs at law of a devisee or legatee who dies before the testator take such property as the joint devisee or legatee would have taken if he had survived the testator, unless a different disposition thereof be made or required by the will." As established by the principal cases interpreting antilapse issues throughout the nation, the burden of proving that a "different disposition" was "made or required by the will" must be upon that party urging the inapplicability of the antilapse statute. Such intention for a different disposition must be expressed clearly and unequivocally by the testator, and the antilapse statute is to be granted broad and liberal construction.

If the intention of the testator in the present case had been to bequeath a share of

his estate to only his sisters living at the time of his death, he should have expressed it.[5] The will as drafted, however, did not require survivorship; nor did it include an alternate distribution which expressed any intent to exclude descendants of a predeceased beneficiary.

▮ Premised upon the broad interpretation of the antilapse statute, the presumption that the testator was aware of the workings of the antilapse statute when the will was written, and the necessity for clear and unambiguous assertion of an alternate intent in order to defeat the antilapse statute, we find that the antilapse statute applies and that the one-third share to which Mrs. Mary Harmath Kish would have been entitled shall pass to her issue. In providing for distribution of an estate, utilization of the phrase "to the express exclusion of any other person or persons," in the absence of clear and unequivocal expression of intent for an alternate distribution, is insufficient to negate the operation of the antilapse statute, West Virginia Code § 41–3–3. We consequently reverse the determination of the lower court and remand this matter for the entry of an order in accord with this opinion.

Reversed and Remanded with Directions.

**5.** As in *In re Smith's Estate*, 97 N.J. Eq. 289, 127 A. 218 (1925), the will could have provided, " 'in case at the time of my decease either of my sisters as aforesaid should not be living then it is my will and I do hereby give the whole of my estate to the one surviving.' " *Id.*