# CHARLESTON.

ROBERT R. HOBBS, EXR. *v.* GEORGE G. BRENNEMAN *et al.*

Submitted April 24, 1923.   Decided June 19, 1923.

1. WILLS—*Parol Evidence of Intention of Testator Admissible Only Where Latent Ambiguity in Will.*

    Parol evidence of the intention of a testator in the disposition of his estate is admissible only where there is a latent ambiguity in the will.   (p. 326).

2. SAME—*Words Should be Given Their Ordinary and Usual Meaning in Construction of Will; Technical Words Presumed to Have Been Used in Technical Sense and so Construed; Words of Established Definite Legal Significance Presumed to Have Been Used in Such Sense, Unless From an Inspection of Whole Will Different Meaning Clearly Appears.*

    In construing a will, words should be given their ordinary and usual meaning; but technical words are presumed to have been used in the technical sense, and are so construed; and words of an established, definite legal signification are

presumed to have been used in their definite legal sense, and should be so construed; unless from an inspection of the whole instrument a different meaning clearly appears. (p. 326).

3.  Same—*"Devised," "Bequest," "Legacy," and "Legatee" Presumed Used in Their Sense, Unless From Context of Whole Will Contrary Clearly Appears.*

A "devise" in its legal sense means a testamentary disposition of real estate, "Bequest" and "legacy" are words used to denote a disposition of personality. A "legatee" is a person to whom a bequest is made or legacy given. These words, when used in wills, are presumed to have been used in their legal sense, unless from the context or the whole will, it clearly appears to the contrary. (p. 328).

4.  Same—*Devisee not Included in Residuary Bequest to Legatees Unless Intention Clearly Appears.*

Where the residuary clause of a will disposes of the remainder of the estate to the "above named legatees" in certain proportions, a devisee named in the will is not included in the residuary disposition unless it clearly appears from the whole will that he was intended to be included, and that the word "legatee" was not used in its established legal sense. (p. 330).

5.  Wills—*Grandson of Devisee Held Entitled to Participate With Legatees.*

Where the testator has given to his grandson a legacy of $3,000 to be paid by a devisee to whom he has bequeathed land, and as a condition of the bequest; and has given various money legacies to other persons specifically named; and in the disposition of the residuum of his estate has directed his executor to distribute such residue, if there be a residue after payment of the sums "bequeathed to the above named legatees," to the "above named legatees" in proportion to the amount bequeathed to each of said legatees, "above named"; the grandson is one of the above named legatees, and is entitled to participation in the residuary fund, if any there be. (p. 333).

Appeal from Circuit Court, Hancock County.

Suit by Robert R. Hobbs, executor, against George G. Brenneman and others. From a decree for plaintiff, defendants appeal.

*Affirmed in part; Reversed in part.*

*Erskine, Palmer & Curl,* for appellants.

*W. W. Ingram* and *Frank W. Nesbitt,* for appellee.

LIVELY, JUDGE:

The decree of June 30, 1922, appealed from, construes the will of Cyrus E. Brenneman who died in February, 1919, ascertains the devises and bequests and to whom they shall be paid and directs the executor to sell and reduce to cash all of the property of the testator except that devised in the second and fifteenth clauses of the will. . It directs the payment of the debts, funeral expenses and costs of administration, together with the various bequests made; and then directs the executor to distribute the remainder to those parties to whom are bequeathed amounts of money by the 3d, 4th, 5th, 6th, 7th, 8th, 9th, 11th, 12th, 13th and 14th clauses of the will in the relative proportions as the amount of said bequests bear to each other.

There are seventeen items or clauses in the will. The controversy directs special consideration to items 2, 10, and 17. Item 1 provides for the payment of the debts and funeral expenses; item 2 reads as follows: "I give, devise and bequeath to my brother, George G. Brenneman, the farm and premises on which I now reside, situate in Grant district, Hancock county, West Virginia, to be his own forever." Items 3, 4, 5, 6, 7, 8, 9, 11, 12, 13 and 14 "give and bequeath" sums of money to certain named relatives, including relatives of testator's wife, and including plaintiff Robert R. Hobbs, the executor. Item 10 reads as follows: "I will, devise and bequeath to Cyrus Edward Brenneman, son of my nephew, Gerard Brenneman, deceased, the sum of three thousand dollars ($3,000), to be paid to him by my brother George G. Brenneman, as a condition of the bequest to my said brother in item second of this, my will." By the 15th item the testator wills, devises and bequeaths to the heirs of his deceased brother, William J. Brenneman, all his right, title and interest in and to Philicey Island in the Ohio River, Beaver County, Pennsylvania, and concludes with the following words: "This is all I intend said heirs to have out of my estate." By the 16th item the testator directs that all of the remainder of his estate, wherever situate, be sold and disposed of as his executor shall deem best, at public or private sale, and authorizes and directs him to execute, acknowl-

edge and deliver all proper writings, conveyances and transfers therefor. The 17th item is as follows: ''In the event that there is a residue and surplus after the payment of the above sums bequeathed to the above named legatees, I will and bequeath that said residue shall be paid by said executor to the above named legatees in proportion to the amount bequeathed to each of said legatees, above named.'' Then Robert R. Hobbs, one of the legatees to whom is given the sum of $10,000, is named as sole executor. The will is dated the 4th day of February, 1919, and the testator died two days later.

The appraisement of the estate was $163,252.64, including the land devised to George G. Brenneman in item 2 of the will at $26,000; and the Philicey Island at $500. The debts and taxes as estimated by the executor, amounted to $17,669.33. The various money legacies, including the $3,000 to Cyrus Edward Brenneman, mentioned in the 10th item of the will, amount to $23,800, leaving the approximate amount to be distributed under the 17th clause, the residuary clause, after deducting the debts and taxes, $98,283.31. It is over the distribution of this sum under the provisions of clause 17 that the controversy arises. The appellants, George G. Brenneman and Cyrus Edward Brenneman, a namesake of the testator, and grandson of George G. Brenneman, contend that they should participate with the other beneficiaries in the will in proportion to the amount bequeathed to each of them. Appellees contend that George G. and his grandson, Cyrus Edward Brenneman, are not legatees within the meaning of the residuary clause and are not entitled to any part of the estate under the will except the farm mentioned in item 2, valued at $26,000, from which the legacy of $3,000 to the grandson shall be paid. In other words, that George G. Brenneman shall receive only the farm, burdened with the specific legacy of $3,000 to his grandson; and the grandson is entitled only to the $3,000, and cannot participate in the residuary fund. The decree, as above stated, embodies the contention of appellees. Under the construction given by the lower court, as embodied in the decree, George G. receives the farm only and Cyrus Edward

is entitled to the sum of $3,000 only, for the payment of which he must look to his grandfather.

The answer of George G. Brenneman sets out his contention as to the true construction of the will and his right to participate in the residuary fund, the amount and nature of decedent's property, the relationship of the various beneficiaries to the testator and a statement of the next of kin of the testator. In addition thereto the answer alleges that the testator and defendant were the sons of Jacob Brenneman, deceased, who devised to them jointly his farm, which was afterwards partitioned; and upon their respective parts of which they resided in brotherly love and affection and neighborly friendship; that the testator had no children, but showed a deep affection for the children of defendant, George G. Brenneman, and at one time actually prepared a deed conveying to them the farm devised in item 2, but was prevailed upon by defendant and his children not to part with his farm in his life time; that afterwards, the testator had declared at different times that the farm should go to them when he died. This allegation of the bill, upon exceptions, was stricken out as having no bearing upon the question of the true construction to be placed on the will. The answer also sets out the conditions under which the will was made and avers that the testator was unfamiliar with the technical phraseology of the law, and in his will did not use technical expressions but told Cooper, the draftsman, the names of his beneficiaries and how much property and what property he wanted each to have, and relied on Cooper to put his wishes in suitable language; that Cooper also was unfamiliar with and unskilled in the use and technical meaning of the words used in the will, and that the words, "will," "give," "devise," "bequeath," "bequest," and "legatees," appearing in the will were used in their popular sense and not in their technical sense, and that these words were not used at all by the testator when he told how his property should be disposed of; that in telling Cooper how he wanted to dispose of the balance of his property under the residuary clause he did not use the words "residue," "surplus," "bequeath" and "legatees," at all, but simply told Cooper that

the balance of his property was to go to the above named persons in proportion to the several amounts given to each exclusive of the heirs of his deceased brother, William J. Brenneman; that the testator was extremely ill at the time, on his death bed, and died thirty-six hours afterwards; that on the evening Cooper was called to make the will he found the testator too ill, and deferred the writing of the will until the next morning, and in the meantime, at the request of the testator, sent for Hobbs, the executor, who, on the following morning, in company with Cooper, spent three hours with the testator in making the will; that the testator did not read it when it was finished but that it was read to him by Cooper in the presence of Hobbs and no one else and that a large part of the time spent with the testator by Cooper and Hobbs was devoted to going over the various stocks and securities of testator in an attempt to estimate the value thereof; that it was apparent that the testator, if he was in condition to make a will at all, knew that he was giving specified money legacies in total amount to use up only a small portion of his estate; that from these facts it was apparent that the testator in naming his beneficiaries and the specific amount of property that he gave to each was only undertaking to fix the proportion of shares of the whole estate which he desired each person named in his will to have; and that if no will had been made, one-fourth part of the estate would have gone to defendant under the law of descents and distribution, a very much greater amount than the value of the farm willed to him.   This part of the answer was also stricken out by the court upon exceptions of plaintiff thereto, as improper to be considered in construing the will. Tendered and filed as an exhibit with the answer is the testimony of witnesses including the scrivener, Cooper, who were examined by the county court at the time the will was probated.   The substance of this evidence is embodied in the part of the answer above referred to as having been stricken out, and the exhibit was not considered by the court, as improper and extraneous.

Appellants say the court erred: (1) in striking out that part of the answer setting up facts and circumstances sur-

rounding testator at the time the will was made; (2) in interpreting the term "legatees" in the 17th clause of the will so as to exclude appellants from participating in the fund distributable thereunder, thus holding that the term "legatees" included only those beneficiaries who were to receive sums of money through the executor; (3) in directing the executor to distribute the residuary fund to the exclusion of appellants.

The intention of the testator is the controlling factor in the interpretation of a will. When the intention is ascertained from an examination of all its parts the problem is solved. The interpretation of a will is simply a judicial determination of what the testator intended; and the rules of interpretation and construction for that purpose formulated by the courts in the evolution of jurisprudence through the centuries are founded on reason and practical experience. It is wise to follow them, bearing in mind always that the intention is the guiding star and when that is clear from a study of the will in its entirety, any arbitrary rule however ancient and sacrosanct applicable to any of its parts must yield to the clear intention. Of course, if the testator attempts to make a disposition forbidden by law it will not be effectuated; as for instance, where the intent is to violate the rule against perpetuities. The intention must be deduced from the words of the will itself. "The true inquiry is, not what the testator meant to express, but what the words do express." *Couch* v. *Eastman,* 29 W. Va. 784; *Wills* v. *Foltz,* 61 W. Va. 262; *Neal* v. *Hamilton,* 70 W. Va. 250; *Allison* v. *Allison,* 101 Va. 537; *Dunham* v. *Averhill,* 45 Conn. 611; *Lomax* v. *Lomax,* 218 Ill. 629. Parol evidence to show the intention of the testator in the use and meaning of the words used is admissible only in cases where there is a latent ambiguity. A latent ambiguity is "that which seemeth certain and without ambiguity for anything that appeareth upon the face of the deed or instrument, but there is some collateral matter out of the deed that breedeth the ambiguity." Bacon Maxims 23; *Hawkins* v. *Garland,* 76 Va. 149; *Paxton* v. *Oil Co.,* 80 W. Va. 187. "A patent ambiguity is one appearing on the face of the will. If the ambiguity

occurs in the wording of a will, producing a palpable uncertainty on the face of the instrument, extrinsic evidence cannot remove the difficulty without putting new words in the mouth of the testator, and, in effect making a new will for him.   In such case the only aid which can be brought to the construction of the bequest is by comparing it with other parts of the will, and thus ascertaining the true meaning and giving effect to the whole will and every part thereof.'' *Serzer* v. *Serzer,* 81 Va. 694; 2 Minor Int. 1062; *Souch* v. *Eastman,* 29 W. Va. 784.

Is there a latent ambiguity in the will, which demands oral testimony to explain it? We fail to perceive it.   The farm goes to George G., the brother, and as a condition of the devise he is to pay the legacy of $3,000 to Cyrus E., the grandson.   There is no question as to whom the other legacies go, the identity of the persons nor the amounts, nor how they shall be paid.   There can be no controversy over the intention of the testator to give the residue of his estate to the legatees before named in proportion to the stated amounts given to each.   The persons to whom the entire estate goes are named.   The ambiguity in clause 17, if any, is patent, and under the rule above stated. it is not permissible to consider oral evidence to aid in its solution.   We do not think the court erred in striking out that part of the answer hereinbefore summarized; nor in refusing to consider the oral testimony taken at the time of probate and filed as an exhibit with the answer.   We must look to the will to determine the testator's intention as to whom and in what amounts he desired the residue of his estate to go, and invoke to our aid the well known and cardinal rules of construction if the will affords no satisfactory clue to the real intention of the testator.

What language in the will indicates that there was any intention of giving George G. any part of the estate except the farm ''to be his own forever?'' There can be none unless we can class him as a legatee under the 17th clause which gives the residue to the ''legatees above named.'' The rule that we should keep in mind that the law favors such construction as conforms most nearly to the laws of descents and

distribution is of little aid here; for George G., under the law of inheritance, would receive one-fourth of the estate, whereas, if he receives the proportion claimed by him under clause 17 in addition to the farm valued at $26,000 (less $3,000), he will receive more than one-half. Hobbs, who is one of the seven living children of Elizabeth Hobbs, a half sister of testator, would receive by inheritance, but a comparatively small sum; whereas he receives $10,000 as a legacy, with the evident intention that he shall receive more by the residuary clause. And if his contention be upheld he will receive out of the estate, including the fixed sum of $10,000, about one-half of the entire estate. Would we not warp the evident intention if we attempted in any degree to invoke the law of descents and distribution?

The words "devise," "bequeath," "legatee" and "devisee," when used in a will are technical, and have a reasonably defined legal meaning, and are presumed to be used in their technical sense, unless the contrary clearly appears. *Allison* v. *Allison,* 101 Va. 543; *King* v. *Johnson,* 117 Va. 49. The verb "devise" used in a will is properly used of realty; and "devisee" is the word regularly used to denote one to whom realty passes. "Bequeath" is the verb used to denote a gift of personalty; and "legatee" is properly used to denote one to whom personalty passes by will. Page on Wills, sec. 2. Jarman says: "A legacy is a gift of personalty by will or other testamentary instrument." He quotes the language of Lord Cranworth in *Windue* v. *Windue,* 6 De G. M. & G. 549, as follows: "In the first place, the words, 'legacy' and 'residuary legatee' prima facie have reference to personal estate only. There is, indeed, no magic in the words themselves, and if they are so used by a testator they may no doubt be construed as referring to real estate. Any man may use his own nomenclature if he only expresses what he means. I have not, however, been able to discover any case which satisfies my mind that independently of context you can understand 'legacy' or 'legatee' or 'residuary legatee' as applying to anything but personal estate." Words applicable exclusively to personal estate have sometimes, by force of the

context, been held to include land. 1 Jarman on Wills, p. 1015. In order to construe a legatee as one who takes real property, that construction must be justified by the context or by other provisions of the will. The intention of the testator to use the word in a comprehensive sense so as to include both real and personal property must appear from other words; otherwise it will be presumed that it was used in the legal technical sense. Of course, that salient controlling factor, the intention of the testator governs, and all rules of construction must bow to it.

We do not perceive any words or phrases in the will which would indicate that the word "legatee" as used therein was used other than in its technical legal sense; and applicable to other than personal estate. The intention to use it as designating a recipient of real estate is not expressed. The intention to so use it could only be found by necessary implication from the will considered in its entirety. "By necessary implication is meant a probability of intention so strong that an intention contrary to it cannot be imputed to the testator." *Graham* v. *Graham,* 23 W. Va. 36. Counsel for appellant, Geo. G. Brenneman, asserts that the word "legatee" should be held to mean one who receives anything by will, personalty or realty; rather than the narrower technical meaning as one who receives personal property by will. An able and persuasive brief evidencing much research and learning has been filed to sustain that proposition. It is pointed out that among the populace the ordinary popular meaning of "legatee" is one who is the recipient of property of any description under a will; and it is argued that as neither the testator nor the scrivener, Cooper, were learned in the law the words "above named legatees" occurring in the residuary clause should be construed in their popular sense, and held to include all who had been thereinbefore made recipients of the testator's bounty; excepting, of course, the heirs of Wm. J. Brennemann, who are expressly limited under the 15th item to Philicey Island. But are we not committed to the rule of construction that where technical words are used in a will they are presumed to have been used in the technical legal

sense unless the contrary appears in the will itself? *Runyon* v. *Mills,* 86 W. Va. 388; 103 S. E. 112; *Allison* v. *Allison,* 101 Va. 537; *Waring* v. *Waring,* 96 Va. 641; *Hurt* v. *Hurt,* 121 Va. 413; *King* v. *Johnson,* 117 Va. 49. The technical legal meaning of a legatee is one to whom personal property is given by will. 40 Cyc. 995. "A legacy is a gift by will of personalty. A legatee is the recipient of a legacy or bequest, and a devisee of a devise" (Devise is a will of lands). Minor's Inst. Vol. 4 pt. 1, p. 90; Vol. 2 Minor's Inst. p. 907. "A legacy is a gift or bequest of personal property; a gift of personal estate by will; a gift of goods and chattels by will or testament; a testamentary disposition of personal property." 25 Cyc. p. 172. "We commonly apply the word to money, or other chattel gifts, though a broader reference is not unappropriate; 'bequest' being the more precise term for a testamentary gift of personalty." Schouler on Wills, sec. 1459. Sometimes words applicable to personal estate have by force of the context been held to include land. "This frequently happens where an expression is evidently used as referential to and synonymous with an anterior word, clearly descriptive of real estate; in which case its extent and operation is measured, not by its own inherent strength, but by the import of its synonym. Thus where a testator after devising lands to A B and C and giving pecuniary legacies to B and C, provided that where either of the persons before named should die without issue, then the said *legacy* should be divided equally between them that were alive; it was held that the word 'legacy' extended to the land before devised." 1 Jarman on Wills (6th ed.) p. 1015. We can see nothing in the context nor in the will which would warrant us by necessary implication in holding that the testator used the word "legatees" in the phrase "the above named legatees," other than in its technical legal meaning. This construction would not include George G. Brenneman as one of "the above named legatees," and would exclude him from participating in the residuary fund. There is no error in the decree in that respect.

Applying this rule of construction, how does it operate

with respect to appellant, Cyrus E. Brenneman, the grandson. He is a legatee, and we think his legacy is a demonstrative one. It is so far general that if for any reason the source from which it is primarily directed to be paid should fail, it would not be defeated but paid out of the general assets. It is a favored legacy, and so far specific that it would not abate with general legacies upon a deficiency of assets. Lomax Exor. 2 Vol. 70; *Corbin* v. *Mills*, 19 Grat. 470; 2 Pom. Eq. sec. 1113; 1 Roper Legacies, 198, 410. Appellee, Hobbs, contends that this legacy is not demonstrative, but specific and cannot be paid at all unless it be paid out of the land devised to George G. In determining whether a legacy is specific or demonstrative, the question is whether it is a gift out of a specified fund or security, or a gift of a specified sum with a specified fund or property as security. Stilphen Appeal of, 100 Me. 146; 4 Ann. Cas. 158. If the reference to a particular fund or object is for the pointing out a mode of payment, it is considered demonstrative, and the legacy may be paid out of the general assets should the particular fund or object fail. But where the legacy is of the fund itself or so charged upon the land as to indicate a clear intention that the fund or object alone shall be the basis of payment, then the legacy is specific, and not demonstrative. *Walls* v. *Stewart*, 16 Pa. St. 275. The sum of $3,000 is given to Cyrus Edward Brenneman absolutely, and not on the condition that it shall be paid by George G., and if not paid by him it shall fail. It is to be paid by the latter as a condition upon which he takes the land. The person who shall pay it and out of what portion of the testator's estate it shall be paid is designated; but should he fail to pay, or refuse to take the devise or the land not be a part of the estate at the testator's death, we do not think the legacy would be adeemed. There is a clear intention that he shall be the recipient of the testator's bounty to the amount of $3,000. *Bradford* v. *McConihay*, 15 W. Va. 767, and cases cited by Judge Green, especially *Gallaher* v. *Gallaher*, 6 Watts. 473. Was he intended to be included as one of the participants in the distri-

bution of the residuary fund under the 17th paragraph of the will? That is the crucial question in his case. Is he one of the "above named legatees" designated in paragraph 17 to whom the residue of the estate, if any, shall be paid by said executor to the above named legatees in proportion to the amount bequeathed to each of said legatees above named? He is a legatee, and has been designated as such in the will before the residuary clause was formed. We find no words expressly separating him from the other legatees. He is not singled out as a legatee who shall not participate in the residue. Can we say that he was intended to be excluded by the wording of that clause? Is the "probability of intention to exclude him so strong that an intention contrary to it cannot be imputed to the testator"? We do not think so. Hs is one of the class of persons named, who shall participate. The technical legal meaning of the words include him, and he can only be excluded by implication. Whether the legacy be demonstrative or not, he would be one of the legatees "above named." But it is argued that he is not among those who are pointed out as the "above named legatees" who have received payment from the testator's estate of sums bequeathed to them, and who are pointed out in the same sentence as the above named legatees who are to receive the residue in proportion to the amount bequeathed to each of them. All of the undisposed of property wherever situate was directed to be sold; and in the event of a residue after paying the sums bequethed to the legatees before named, the executor, was directed to pay it out to the before named legatees in proportion named. The argument is that the persons intended are those only who are paid their legacies by the executor, and that because George G. was directed to pay the $3,000 legacy as a condition of the bequest of the farm Cyrus E. is excluded. Can we say that the testator intended to limit his grandson and namesake to $3,000, when others of no blood relation are given more than the sums specifically which he desired them to have? Besides, circumstances might have made it incumbent upon the executor to look to the payment of the $3,000, as we have hereinbefore suggested. The invo-

cation of the rule that words used in a will which have an established legal meaning must be given that meaning unless it is clear that a different meaning was intended, and which rule precludes George G. from the residuary paragraph, he not being a legatee, will, with equal force include Cyrus E. therein, he being a legatee before named, and to exclude him the intention must be so clear as to satisfy the mind of the chancellor. We are not satisfied that such intention appears. It is significant that the testator made it clear that the heirs of Wm. J. Brenneman should not participate in the residuum. How easy it would have been to make it equally clear that Cyrus E. should not be one of the legatees above mentioned, if it was the intention to exclude him. A somewhat similar question arose in *Marshall's Exor.* v. *Hadley,* 50 N. J. Eq. 547. Eighteen persons were named as legatees and devisees. To fourteen direct gifts were made either of a certain sum of money or of the income of a certain sum, or of a specific chattel. To one, Caroline Buckland, was devised the remainder in fee in a house and lot which the testator supposed he owned, but did not. That devise failed. The residuary clause gave all of the remainder of the estate of every kind wheresoever situate *to the several legatees and devisees hereinbefore named* to be divided among them, share and share alike. The legacies ranged in sums from $20,000 to $250; and one bequest (to Caroline Buckland) failed. The court held that all of the 18 persons named participated equally in the residuary estate; saying: "The phrase, 'the several legatees and devisees hereinbefore named,' understood in its ordinary and grammatical sense, embraces undeniably all who had before been named, whether they were named as unconditional legatees or devisees, or only as possible or contingent legatees or devisees. The words 'hereinbefore named' constitute an essential and vital part of the description of the persons to whom the testator intended to give his residuary estate, and so long as they stand the court must give them full effect, no matter how absurd or unreasonable such intention may appear to others to be." ·

We hold that Cyrus E. Brenneman is entitled to partici-

pate in the residuary fund. The decree will be reversed in part, modified to the extent indicated; and in all other respects affirmed.

*Affirmed in part; reversed in part.*