566 S.E.2d 588

**Robert F. PAINTER, Executor of the Last Will and Testament of Curtis Jackson Coleman, Plaintiff Below, Appellee**

v.

**Malcolm J. COLEMAN, Claude East, Jr., and B.C. Wilkerson, Jr., Defendants Below, Appellants**

**Hilda M. Allen, Onetta L. Shorter, Geneva M. Pederson, Kim M. Jacobs, Michael McPhillips and Patrick McPhillips, Defendants Below, Appellees**

**Hilda M. Allen and O'Neta Shorter, Third–Party Plaintiffs Below, Appellees,**

v.

**Robert F. Painter, individually, Third–Party Defendant Below, Appellee**

No. 30255.

Supreme Court of Appeals of West Virginia.

Submitted May 22, 2002.

Decided June 7, 2002.

Thomas K. Fast, Fast Law Office, Fayetteville, for Appellants.

Paul O. Clay, Jr., Fayetteville, for Appellee, Robert F. Painter, Executor.

D. Clinton Gallaher, IV, Fayetteville, for Appellees, Hilda M. Allen and O'Neta L. Shorter.

Philip J. Tissue, Oak Hill, for Appellee, Robert F. Painter, individually.

ALBRIGHT, Justice:

The Appellants, Malcolm J. Coleman, Claude East, Jr., and B.C. Wilkerson, Jr., appeal from an adverse order entered by the Circuit Court of Fayette County on June 5, 2001, which held that Appellees Hilda M. Allen and O'Neta L. Shorter (hereinafter referred to as "Appellees" or the "nieces") were beneficiaries under the will of Curtis J. Coleman and, therefore, entitled to distribution of his estate under the terms of the will. Appellants, who would benefit through intestate succession, argue that the will of Mr. Coleman failed to properly devise the estate and accordingly, the laws of intestacy should control. Upon our review of this matter, we find no error and, accordingly, affirm.

## I. Factual and Procedural Background

On October 1, 1963, Mr. Coleman and his wife, Juanita, executed separate, reciprocal wills that were both prepared by attorney C.R. Hill, Jr. The wills provided that if either spouse predeceased the other, the living spouse would inherit everything and further provided that if both of the Colemans died simultaneously, Appellees, who are nieces [1] of the Colemans, would inherit the estate that remained upon payment of the estate's expenses. Following Mrs. Coleman's death on November 6, 1994, all of her estate was transferred to her husband pursuant to the terms of her will.

Mr. Coleman visited Mr. Robert F. Painter, his certified public accountant, on November 21, 1994, for the purpose of changing his will. While there is some dispute as to whether Mr. Coleman or Mr. Painter directed Mr. Painter's secretary to type the will, a new will was prepared and executed in Mr. Painter's office on that date. Appellants take the position that the only substantive change made to the new will, when compared to Mr. Coleman's 1963 will,[2] was the substitution of a new executor—Mr. Painter instead of Mr. Coleman's sister-in-law. In actuality, there were multiple changes made to the new will: (1) the paragraph bequeathing Mr. Coleman's estate to Mrs. Coleman in the event of his death was deleted; (2) the nieces' names were altered to reflect their married surnames and their new places of residence; (3) an additional bequest of Mr. Coleman's 1994 Oldsmobile was made to Hilda M. Allen; and (4) Mr. Painter was appointed executor of the will in the event Mrs. Coleman could not serve in such capacity. The new will was properly executed and witnessed.

On November 12, 1995, Mr. Coleman died without issue. As executor of the will,[3] Mr. Painter filed an appraisement of the estate valuing it at $555,254.80. Before seeking advice of counsel, Mr. Painter distributed $200,000 to the two nieces. On November 25, 1996, Mr. Painter filed a civil action in the

---

1. Hilda Allen is related through blood to Mr. Coleman and O'Neta Shorter is related by blood to Mrs. Coleman.

2. Although the record submitted to this Court contains only the 1963 will of Mrs. Coleman, the parties are in complete agreement that the 1963 wills were reciprocal. In addition, the attorney who prepared the 1963 wills signed an affidavit that is part of the record which states that Mr.

Coleman's 1963 will was "identical" to Mrs. Coleman's will with the exception of certain gender specific terms.

3. Mr. Coleman's 1994 will was admitted to probate in the Office of the County Clerk of the County Commission of Fayette County on November 30, 1995.

circuit court through which he sought a declaratory judgment[4] regarding distribution of the estate based on the absence of a standard residuary clause and the apparent failure of the will to make a valid devise or bequest given the Colemans' non-simultaneous deaths.

After several years of inactivity,[5] the lower court held a status conference on March 16, 2001, at which time it acknowledged the pendency of various motions for summary judgment. Rather than ruling on those motions, however, the lower court instead declared, as a matter of law, that the 1994 will of Mr. Coleman, on its face, evidenced a clear intent that Appellees were to inherit under the will, "equally, share and share alike, in fee simple and absolutely." Appellants appeal from this order of the lower court, which directs Mr. Painter to distribute the estate of Mr. Coleman to Appellees.

## II. Standard of Review

■ Since the lower court's ruling was a declaratory judgment regarding the construction of the will, our review is governed by this Court's holding in syllabus point three of *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995): "A circuit court's entry of a declaratory judgment is reviewed *de novo*." We proceed to review this matter to determine whether the lower court erred in its ruling regarding Mr. Coleman's 1994 will.

## III. Discussion

■ Decisions involving construction of wills always begin with recognition of the following axiom: "The paramount principle in construing or giving effect to a will is that the intention of the testator prevails, unless it is contrary to some positive rule of law or principle of public policy." Syl. Pt. 1, *Farmers and Merchants Bank v. Farmers and Merchants Bank*, 158 W.Va. 1012, 216 S.E.2d 769 (1975); *accord* Syl. Pt. 4, *Weiss v. Soto*, 142 W.Va. 783, 98 S.E.2d 727 (1957); *In re Conley*, 122 W.Va. 559, 561,12 S.E.2d 49, 50

(1940). In *Hobbs v. Brenneman*, 94 W.Va. 320, 118 S.E. 546 (1923), we described the role of the judiciary in ascertaining the intention of the testator:

> When the intention is ascertained from an examination of all its parts the problem is solved. The interpretation of a will is simply a judicial determination of what the testator intended; and the rules of interpretation and construction for that purpose formulated by the courts in the evolution of jurisprudence through the centuries are founded on reason and practical experience. It is wise to follow them, bearing in mind always that the intention is the guiding star, and when that is clear from a study of the will in its entirety, any arbitrary rule, however ancient and sacrosanct, applicable to any of its parts, must yield to the clear intention.

*Id.* at 326, 118 S.E. at 549.

■ Appellants argue that because the Colemans did not die simultaneously and because the will lacked a standard residuary clause, the estate is subject to passing through the laws of intestacy. *See* W.Va. Code § 41-3-4 (1977) (Repl.Vol.1997) (stating that real or personal estate "in the absence of ... residuary devise or bequest[ ] shall pass as in case of intestacy"). Both this Court and others, however, have recognized that "[t]he law favors testacy over intestacy." Syl. Pt. 8, *In re Estate of Teubert*, 171 W.Va. 226, 298 S.E.2d 456 (1982); *Powell v. Holland*, 224 Va. 609, 299 S.E.2d 509 (1983) (recognizing that "[u]nlike the law in England, '[i]n America, the law does not favor intestacy; rather it favors the right of a donor to dispose of his property at death as he chooses, even if at the expense of his heirs at law' ") (quoting *Bauserman v. Digiulian*, 224 Va. 414, 297 S.E.2d 671, 674 (1982)).

■ In making its declaration that the intent of Mr. Coleman was clear from the " 'four corners' " of the will, the lower court was applying the following principle set forth

---

4. *See* W.Va.Code § 55-13-1 (1941) (Repl.Vol. 2000).

5. Due to the lack of rulings from the lower court in the declaratory judgment ·action, Appellees filed a separate complaint (Civil Action No. 99-

C-285(V)) in which they sought a directive from the circuit court ordering Mr. Painter, as executor, to distribute the estate's assets. No ruling has been made in that civil action.

in syllabus point seven of *Weiss:* "In construing a will the intention must be ascertained from the words used by the testator, considered in light of the language of the entire will and the circumstances surrounding the testator when he made his will." 142 W.Va. at 784, 98 S.E.2d at 729. Among the circumstances surrounding the testator's making of the 1994 will considered by the lower court was the fact that Mr. Coleman executed this will just days after his wife had died. Given this fact, the circuit court recognized that Mr. Coleman was fully aware at the time he executed his second will that simultaneous deaths were a physical impossibility.

In making its ruling, the circuit court was appreciative of the fact that if the intent of Mr. Coleman was not to devise his estate to Appellees when he executed the 1994 will, then there was no purpose to be accomplished through the execution of that will. The lower court was also cognitive of the principle that "[w]here a will is made it is presumed that the testator intended to dispose of his whole estate, and such presumption should prevail unless the contrary shall plainly appear." Syl. Pt. 4, *Rastle v. Gamsjager*, 151 W.Va. 499, 153 S.E.2d 403 (1967).

While courts clearly prefer not to make additions to or deletions from the language of a will,

it is a well settled rule that effect must be given to every word of the will, if any sensible meaning can be assigned to it not inconsistent with the general intention of the whole will taken together. *Words are not to be changed or rejected unless they manifestly conflict with the plain intention of the testator, or unless they are absurd, unintelligible or unmeaning, for want of any subject to which they can be applied.*

*Tiffany v. Thomas*, 168 Va. 31, 190 S.E. 101, 103 (1937) (quoting *Wootton v. Redd's Ex'r*, 53 Va. 196, 12 Grat. (53 Va.) 196, 208 (1855) (emphasis supplied)). Under our state constitution, this decisional law of Virginia is clearly a part of this state's common law,[6] because "at the time West Virginia was founded, we adopted the common law of England and the law of the State of Virginia, except for those portions specifically changed by our Legislature or Constitution."[7] *Boarman v. Boarman*, 210 W.Va. 155, 159, n. 4, 556 S.E.2d 800, 804, n. 4 (2001); *accord* Syl. Pt. 3, *Seagraves v. Legg*, 147 W.Va. 331, 127 S.E.2d 605 (1962) (holding that "[t]he common law, if not repugnant of the Constitution of this State, continues as the law of this State unless it is altered or changed by the Legislature. Article VIII, Section 21 of the Constitution of West Virginia; Chapter 2, Article 1, Section 1, of the Code of West Virginia").

6. We explained in *State ex rel. Knight v. Public Service Commission*, 161 W.Va. 447, 245 S.E.2d 144 (1978), that

[o]ur link with Virginia common law, and thus indirectly with English common law, was provided by the original West Virginia Constitution, which stated that "[S]uch parts of the common law and the laws of the State of Virginia as are in force within the boundaries of the State of West Virginia, when this constitution goes into operation, and not repugnant thereto, shall be and continue the law of this state until altered or repealed by the legislature." [*W.Va. Const.*, art. II, § 8 (1863)]. 161 W.Va. at 457, n. 4, 245 S.E.2d at 150, n. 4.

7. Both constitutional and statutory authority address our adoption of the common law upon our state's formation:

The constitutional provision incorporating the common law into the law of West Virginia

is article VIII, section 13, formerly article VIII, section 21, which provides:

Except as otherwise provided in this article, such parts of the common law, and of the laws of this State as are in force on the effective date of this article and are not repugnant thereto, shall be and continue the law of this State until altered or repealed by the legislature.

This provision of the Constitution is to be read *in pari materia* with W.Va.Code § 2-1-1 (1979 Replacement Vol.), which states:

The common law of England, so far as it is not repugnant to the principles of the Constitution of this State, shall continue in force within the same, except in those respects wherein it was altered by the general assembly of Virginia before the twentieth day of June, eighteen hundred and sixty-three, or has been, or shall be, altered by the legislature of this State.

*Thomas v. Board of Educ.*, 167 W.Va. 911, 916–17, n. 3, 280 S.E.2d 816, 819, n. 3 (1981).

■■ Accordingly, we hold that in construing a will, effect must be given to every word of the will, if any sensible meaning can be assigned to it not inconsistent with the general intention of the whole will taken together. Words are not to be changed or rejected unless they manifestly conflict with the plain intention of the testator, or unless they are absurd, unintelligible or unmeaning, for want of any subject to which they can be applied. Application of that principle to this case compels the conclusion that only by excising the simultaneous death condition of Mr. Coleman's devise to the Appellees, can the obvious intent of Mr. Coleman, as a childless individual, to leave his estate "share and share alike" to his niece and his wife's niece be effectuated.

■ There is no dispute that if the simultaneous death condition of the devise to the nieces is left intact, there is no other bequest or devise that can be accomplished through this testamentary instrument. Thus, this case presents one of those rare instances when the failure to reject certain language will render the document without any effect. If this Court were to adopt Appellants' position, we would be nullifying the only testamentary intent contained in the 1994 will. To do so would be inconsistent with long-standing principles of giving effect to a testator's intent, provided that such intent does not violate law or public policy. *See Farmers and Merchants Bank,* 158 W.Va. at 1012, 216 S.E.2d at 770, syl. pt. 1. And, as we recognized in *Davis Trust Co. v. Elkins,* 114 W.Va. 742, 175 S.E. 611 (1934), "[c]ourts are never bound to give a strict and literal interpretation to the words used, and by adhering to the latter, defeat the manifest object and design of the testator." *Id.* at 746, 175 S.E. at 613. Furthermore, "[i]t is not the policy of the law to seek grounds for avoiding devises and bequests, but rather to deal with both so as to uphold and enforce them ...." *Id.*

The case of *In re Conley,* 122 W.Va. 559, 12 S.E.2d 49 (1940), provides us with analogous authority for discussion purposes.[8] At issue in *Conley* was the inept drawing of a will with language that attempted to transfer the "share" of the testator's sons' life estates upon their respective deaths to the testator's two grandchildren. The Court commented: "Thus it seems that the provisions for the disposal of testatrix's real estate, after the life estates have expired, if taken literally, are without any possible legal operation, and testatrix died intestate as to the remainders." *Id.* at 562, 12 S.E.2d at 51. Preferring to attach meaning to the words "his share" rather than to create an intestacy, the Court observed that: "Wherever possible to bring into operation a testator's intention, a court will give such construction to a will as to bring into effect every word or part thereof and such construction will be made as to avoid the creation of intestacy." *Id.* Expounding further on this principle, the Court in *Conley* stated that: "This duty embraces the power of a court, if necessary to ascertain a testator's real intention, *to reject, supply, transpose, or substitute words.*" *Id.* (emphasis supplied).

■ Applying these "salutary" principles to the facts in *Conley,* the Court determined that:

It seems quite unreasonable that testatrix, having named her two grandchildren in both paragraphs, intended that they take nothing thereunder. On the contrary, her evident intention was to deal effectively with the remainders after the expiration of the life estates; and, applying the rules of construction heretofore discussed, we think she intended by the words "his share", the remainder estate after the expiration of each life tenancy.

122 W.Va. at 562, 12 S.E.2d at 51. This Court thus held:

Where words are used in a will in a context which renders them doubtful or mean-

---

8. It has been recognized that "[i]nasmuch as each case must be governed by its own particular facts and circumstances, ... little aid can be derived in the construction of wills from adjudged cases." *Davis Trust Co.,* 114 W.Va. at 745–46, 175 S.E. at 613. This is why, as the Court surmised in *Davis Trust Co.,* "that it may

be doubted if any other source of enlightenment in the construction of a will is of more assistance than the application of natural reason to the language of the instrument under the light which may be thrown upon the intent of the testator by language used by him." *Id.* at 746, 175 S.E. at 613.

ingless, they may be substituted by other words, if such substitution will carry into operation the real intention of the testator as expressed in the will, considered as a whole and read in the light of the attending circumstances.

*Conley,* 122 W.Va. at 559, 12 S.E.2d at 49, syl. pt. 2.

In *Weiss,* this Court similarly prevented the technical terms of a holographic will from being "entirely futile and utterly without meaning." 142 W.Va. at 799, 98 S.E.2d at 737. In that case, the language of the will gave the testator's wife a fee simple estate, while at the same time attempted to give the testator's daughters the residue of the estate. Applying common sense principles of construction, this Court concluded that, notwithstanding the language used, the testator intended to give his wife a life estate and his daughters a remainder in fee simple. In reaching this conclusion, the Court looked to the testator's awareness of the financial condition of his wife and three married daughters at the time of the devise and concluded that this knowledge supported a life estate devise to the wife and a remainder estate to the daughters given that two of the daughters had husbands with particularly weak financial means. *Id.* at 798, 98 S.E.2d at 737. In full recognition of the fact that the residuary language of the will would lack any meaning if the words were applied in their technical sense, the Court in *Weiss* refused to permit the testator's intent to be frustrated because of the insertion of improper terms in the will.

Applying these principles to the case at bar, we agree with the lower court that the intent of the testator to leave his estate to his niece and to his wife's niece is apparent from the four corners of the will. Any other interpretation of the will results in a lifeless document that serves no purpose whatsoever. Moreover, it defies logic, as discussed above, that Mr. Coleman would have had a new will prepared following his wife's death—a document which continued to provide for Appellees to receive his estate—if he had not intended for those individuals to be his bene-

ficiaries. Like the observation made in *Conley,* "[i]t seems quite unreasonable" that the testator, "having named" Appellees in his will, "intended that they take nothing thereunder." [9] 122 W.Va. at 562, 12 S.E.2d at 51.

It has been observed on multiple occasions that

> [t]he only reason anyone can have for making a will is to change the devolution of his property from that prescribed by the statutes of descent and distributions. Hence there is a strong presumption that the testator intended to dispose of his entire estate, and courts are decidedly averse to adopting any construction of a will which leaves a testator intestate as to any portion of his estate, unless compelled to do so.

*Powell,* 299 S.E.2d at 512 (quoting *McCabe v. Cary's Ex'r,* 135 Va. 428, 116 S.E. 485, 487 (1923)). To decide this case by finding the devise inoperative due to the absence of the Colemans' simultaneous deaths would necessarily result in forcing the entire estate to pass through intestacy. *See* W.Va.Code § 41–3–4. Upon an examination of the will in its entirety and the circumstances surrounding its execution, we cannot reach the conclusion that this was the intent of Mr. Coleman. To the contrary, we concur with the lower court that the clear testamentary intent of Mr. Coleman was to leave his estate to Appellees.

Based on the foregoing, the decision of the Circuit Court of Fayette County is hereby affirmed.

Affirmed.

---

9. One possible explanation for the lack of a residuary clause was Mr. Coleman's singular intent that the nieces would be the only beneficiaries to recover his estate.