591 S.E.2d 191

Carolyn HEDRICK, William Phelps, John Phelps, Kathy Stemple, Kristy Knotts, Judith Cummins, and Ruth Makepeace, Petitioners Below, Appellants,

v.

Charles R. MOSSER and Robert Mosser, Respondents Below, Appellees.

No. 31268.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 23, 2003.

Decided Nov. 24, 2003.

Richard Thompson, Lavalette, for the Appellants.

Gregory H. Schillace, Schillace Law Office, Clarksburg, for the Appellees.

PER CURIAM.

This is an appeal by Carolyn Hedrick, William Phelps, John Phelps, Kathy Stemple, Kristy Knotts, Judith Cummins, and Ruth Makepeace (hereinafter "Appellants") from a final order of the Circuit Court of Tucker County regarding the construction of the will of Glendie E. Mosser, Jr., as it pertains to ceratin parcels of real estate. The Appellants contend that the lower court erred in interpreting the will to the benefit of Charles Mosser and Robert Mosser, sons of the testator (hereinafter "Appellees"). Upon thorough examination of the record and arguments of counsel, we reverse the determination of the lower court and remand for entry of an order consistent with this opinion.

## I. Factual and Procedural History

By deed dated September 18, 1961, four parcels of real estate in Tucker County, West Virginia, comprising approximately 150 acres of land, were conveyed to Glendie E. Mosser, Jr., and his sister, Evangeline D. Phelps, as joint tenants with the right of survivorship. On February 10, 1990, Evangeline D. Phelps died intestate. By operation of the joint tenancy with right of survivorship, the four parcels of real estate became the sole property of Glendie E. Mosser, Jr.

On November 11, 1994, Glendie E. Mosser, Jr., died testate, leaving a valid will, executed on September 10, 1972, and probated on February 2, 1995. With regard to the property in question, the will provided as follows: "I give, devise, and bequeath unto my sister, Evangeline D. Phelps, my interest in real estate that we own jointly." Mr. Mosser failed to make any alternate disposition of that property. He did, however, include a general residuary clause in his will, leaving

all his other possessions to his sons, the Appellees.

On November 29, 2000, the Appellants instituted a declaratory judgment action requesting that the lower court determine the respective shares of any heirs in the property and to partition the property. Upon review of the will, the lower court found, by order dated July 9, 2002, that at the time of Mr. Mosser's death, there was no real estate "jointly owned" with Mrs. Phelps, since the death of Mrs. Phelps in 1990 triggered operation of the right of survivorship and vested the property exclusively with Mr. Mosser. The lower court also found that Glendie E. Mosser, Jr., and Evangeline D. Phelps desired the survivor of them to be vested entirely with the subject real estate, to the exclusion of all other parties. The lower court held that Mr. Mosser's will devised nothing to either Mrs. Phelps or her heirs, and the real estate at issue passed under the residuary clause to Mr. Mosser's sons, the Appellees in this matter.

The Appellants appeal that determination, contending that the lower court erred by finding that the real estate in question failed to pass to Mrs. Phelps' heirs. The Appellants maintain that Mr. Mosser's reference to "jointly owned" property was simply his means of identifying the property once held jointly with his sister and that it was Mr. Mosser's intent that his sister and/or her issue receive the real estate upon his death. The Appellants further maintain that the lower court erred by failing to apply West Virginia's anti-lapse statute, West Virginia Code § 41-3-3 (1923) (Repl.Vol.1997) and by determining that the real estate passed under the residuary clause to the Appellees.

## II.   Standard of Review

■ The Appellants appeal the lower court's conclusions regarding the construction of a will in a declaratory judgment action. Thus, our review of this matter is governed by syllabus point three of *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995), as follows: "A circuit court's entry of a declaratory judgment is reviewed *de novo.*"

## III.   Discussion

### A.   Intent of Testator Prevails

■ This Court has consistently recognized that "[t]he paramount principle in construing or giving effect to a will is that the intention of the testator prevails, unless it is contrary to some positive rule of law or principle of public policy." Syl. Pt. 1, *Farmers and Merchants Bank v. Farmers and Merchants Bank*, 158 W.Va. 1012, 216 S.E.2d 769 (1975); *see also Painter v. Coleman*, 211 W.Va. 451, 454, 566 S.E.2d 588, 591 (2002). In syllabus point five of *Weiss v. Soto*, 142 W.Va. 783, 98 S.E.2d 727 (1957), this Court explained that "[i]n ascertaining the intention of the testator, the entire will should be considered." Syllabus point seven specified that "[i]n construing a will the intention must be ascertained from the words used by the testator, considered in the light of the language of the entire will and the circumstances surrounding the testator when he made his will."

■ In *Hobbs v. Brenneman*, 94 W.Va. 320, 118 S.E. 546 (1923), we described the role of the judiciary in ascertaining the intention of the testator, as follows:

When the intention is ascertained from an examination of all its parts the problem is solved. The interpretation of a will is simply a judicial determination of what the testator intended; and the rules of interpretation and construction for that purpose formulated by the courts in the evolution of jurisprudence through the centuries are founded on reason and practical experience. It is wise to follow them, bearing in mind always that the intention is the guiding star, and when that is clear from a study of the will in its entirety, any arbitrary rule, however ancient and sacrosanct, applicable to any of its parts, must yield to the clear intention.

*Id.* at 326, 118 S.E. at 549. In applying the words used by the testator in the will, this Court held as follows in syllabus point six of *Painter*:

In construing a will, effect must be given to every word of the will, if any sensible meaning can be assigned to it not inconsistent with the general intention of the

whole will taken together. Words are not to be changed or rejected unless they manifestly conflict with the plain intention of the testator, or unless they are absurd, unintelligible or unmeaning, for want of any subject to which they can be applied.

211 W.Va. at 452, 566 S.E.2d at 589.

## B. Utilization of Technical Legal Principles

In syllabus point eight of *Weiss*, this Court explained as follows: "In the construction of a will technical words are presumed to have been used in a technical sense and should ordinarily be given their strict meaning; but this rule is not absolute and when it appears from the context that another meaning was intended such words will not be applied in their technical sense." In *Weiss*, this Court encountered a situation in which the language of a will appeared to provide the testator's wife with a fee simple estate, while giving the testator's daughters the residue of the estate. This Court attempted to prevent the terms of the will from being "entirely futile and utterly without meaning." 142 W.Va. at 799, 98 S.E.2d at 737. In construing the will, this Court concluded that, despite the precise language used, the testator intended to give his wife a life estate and his daughters a remainder in fee simple. This Court examined the issue of the testator's awareness of the financial condition of his wife and three married daughters at the time of the devise and concluded that such knowledge supported a life estate devise to the wife and a remainder estate to the daughters. *Id.* at 798, 98 S.E.2d at 737. The *Weiss* holding examined the words employed, as well as the surrounding circumstances, to disallow complete frustration of the testator's intent. Strict adherence to the technical meaning of the words used would have led to an illogical and presumably unintended result.

In this vein, this Court also held as follows in syllabus point one of *Davis Trust Co. v. Elkins*, 114 W.Va. 742, 175 S.E. 611 (1934): "In the construction of wills uniform justice is better than strict consistency, because the testator necessarily confides his meaning to an instrument which courts of equity are sacredly enjoined to interpret justly as between him and those he leaves behind, should controversy arise; death having closed his own lips."

We also recognized in *Davis Trust* that "[c]ourts are never bound to give a strict and literal interpretation to the words used, and by adhering to the latter, defeat the manifest object and design of the testator." 114 W.Va. at 746, 175 S.E. at 613. In syllabus point two of *In re Conley*, 122 W.Va. 559, 12 S.E.2d 49 (1940), this Court held:

Where words are used in a will in a context which renders them doubtful or meaningless, they may be substituted by other words, if such substitution will carry into operation the real intention of the testator as expressed in the will, considered as a whole and read in the light of the attending circumstances.

This Court has also observed as follows in syllabus point three of *In re Estate of Teubert*, 171 W.Va. 226, 298 S.E.2d 456 (1982): " 'Technical words are not necessary in making testamentary disposition of property; any language which clearly indicates the testator's intention to dispose of his property to certain persons, either named or ascertainable, is sufficient.' Syllabus Point 1, *Runyon v. Mills*, 86 W.Va. 388, 103 S.E. 112 (1920)."

## C. Application of Foregoing Principles to the Present Case

Implementing such principles in the case sub judice, we are compelled to conclude that Mr. Mosser's intent was to leave the property which had been jointly held with his sister to his sister or her issue. As this Court observed in *Davis Trust Co.*, "it may be doubted if any other source of enlightenment in the construction of a will is of more assistance than the application of natural reason to the language of the instrument under the light which may be thrown upon the intent of the testator by language used by him." 114 W.Va. at 746, 175 S.E. at 613. Mr. Mosser's will was executed on September 10, 1972, almost eleven years after he and Mrs. Phelps had acquired the jointly owned property. At the time that will was drafted, it was apparent from the manner in which the property was held, as a joint tenancy with the right of survivorship, that the

property would have vested in the survivor of the two siblings absent any alternate disposition. Thus, in ascribing some meaning to Mr. Mosser's inclusion of reference to the property jointly owned with Mrs. Phelps, it appears most plausible that he intended Mrs. Phelps and/or her heirs to have the real estate upon his death. In making such reference, it further appears that the word "jointly" was employed as a means of identifying the property Mr. Mosser intended to be devised to Mrs. Phelps, rather than as a reference to its legal status as a joint tenancy with the right of survivorship. The property which had been conveyed to him and his sister jointly in 1961 still existed, even if its co-ownership with the sister had terminated at her death.

By concluding, based upon strict legal terms, that there was no jointly owned property to pass in the will, the lower court essentially subordinated the intent of the testator and elevated the technical nature of joint tenancy with right of survivorship. The intent of the testator should not be defeated by application of a strict technical view of the words employed, and this Court should not permit the technical attributes of the legal construct of a joint tenancy with right of survivorship or the imprecise use of language in the will to result in obscuring the effectuation of the testator's intent or preventing the operation of the anti-lapse statute.

### D. Anti-lapse Statute

■ Based upon this Court's conclusion that the testator intended his sister and/or her heirs to inherit the property in question, we also determine that the provisions of West Virginia's anti-lapse statute, West Virginia Code 41–3–3, are applicable to this matter. That statute provides as follows:

If a devisee or legatee die before the testator, or be dead at the time of making of the will, leaving issue who survive the testator, such issue shall take the estate devised or bequeathed, as the devisee or legatee would have done if he had survived the testator, unless a different disposition thereof be made or required by the will. And if the devise or bequest be made to two or more persons jointly, and one or more of them die without issue, or be dead at the time of the making of the will, the part of the estate so devised or bequeathed to him or them shall not go to the other joint devisees or legatees, but shall, in the case of a devise, descend and pass to the heirs at law, and, in the case of a bequest, go and pass to the personal representative, of the testator, as if he had died intestate, unless the will otherwise provides.

■ Based upon the provisions of the anti-lapse statute, where an intended devisee predeceases a testator, the property descends to the issue of the predeceased devisee unless a contrary intent was expressed. *See Kubiczky v. Wesbanco Bank Wheeling*, 208 W.Va. 456, 541 S.E.2d 334 (2000). Specifically, syllabus point one of *Mrocko v. Wright*, 172 W.Va. 616, 309 S.E.2d 115 (1983), provided: "*W.Va.Code* 41–3–3 [1923] provides that the heirs at law of a devisee or legatee who dies before the testator take such property as the joint devisee or legatee would have taken if he had survived the testator, unless a different disposition thereof be made or required by the will."

■ This Court has consistently held that any doubts regarding the application of the anti-lapse statute are to be "resolved in favor of normal operation of the statute, as liberally construed." *Kubiczky*, 208 W.Va. at 461, 541 S.E.2d at 339. In *Kubiczky*, this Court quoted the North Carolina court in *Early v. Bowen*, 116 N.C.App. 206, 447 S.E.2d 167 (1994) review denied, 339 N.C. 611, 454 S.E.2d 249 (1995). The *Early* court held that "[a] testator who desires to prevent lapse must express such intent or provide for substitution of another devisee in language sufficiently clear to indicate what person or persons testator intended to substitute for the legatee dying in his lifetime; otherwise the anti-lapse statute applies." *Early*, 447 S.E.2d at 170.

In the present case, when Mr. Mosser executed his will, his sister Mrs. Phelps was still living. Upon her death, Mr. Mosser failed to execute another will. There is no alternate disposition[1] of the real estate in-

---

**1.** Had Mr. Mosser intended to prevent Mrs. Phelps' children from obtaining the property, he

cluding within the will, and there is no indication that Mr. Mosser intended that the anti-lapse statute should not apply. We consequently hold that the anti-lapse statute does apply to permit the property in question to be devised to the Appellants, as the issue of Mrs. Phelps. We reverse the determination of the lower court and remand for entry of an order consistent with this opinion.

Reversed and remanded.

could have included language in his will to the effect that in the event that Mrs. Phelps prede-

ceased him, the real estate in question should be added to his residual estate.